OPINION OF THE COURT
Bernard J. Malone, Jr., J.
The motion of the defendants, which was given summary judgment treatment pursuant to CPLR 3211 (c) by letter dated September 13, 2000, for an order dismissing the amended complaint for failure to state a cause of action is granted.
During 1985 and 1986, the New York State Legislature enacted a comprehensive legislative package in response to the rising costs of medical malpractice insurance premiums which threatened the availability of health care in New York State because doctors and dentists were allegedly leaving the State due to the great expense of obtaining sufficient malpractice insurance coverage (L 1985, ch 294; L 1986, ch 266). As part of the reform measures, Insurance Law § 5502 was amended to provide hospital-affiliated dentists and physicians with an additional layer of $1 million of insurance protection in the event of malpractice judgments which exceeded their primary, private malpractice coverage, at no cost to the practitioners (L 1985, ch 294, § 18). The legislation created the Hospital Excess Liability Pool (L 1986, ch 266, § 18 [the Pool]), which entity had the obligation of collecting premium payments from participating hospitals and specified third-party direct payers and using those funds for the purchase of excess malpractice insurance for eligible dentists and doctors.
The legislation designated the Superintendent of Insurance and the Commissioner of Health as the administrators of the program, and, in turn, the Superintendent designated HANYS Services, Inc. as the administrator of the Pool. The Superintendent promulgated regulations each year establishing the premium rates for the excess malpractice policies purchased through the Pool (L 1986, ch 266, § 40). The plaintiffs, other than HANYS, are insurers that provided the excess malpractice insurance coverage and received premium payments for such coverage from the Pool. The Pool was funded by hospital in-patient discharge “add-on” fees that were authorized by the *255 Commissioner (L 1986, eh 266, § 18). These add-on fees were paid by private health insurers (such as the defendants), commercial insurers, health maintenance organizations, and self-insured plans at the time that payment of the hospital bills was made. In certain instances, the hospitals were responsible for forwarding the add-on fees to the Pool. In other cases, the payers, such as these defendants, made the payments for the add-on fees directly to the Pool.
According to the affidavit of John Gahan, the Assistant Director of the Bureau of Primary and Acute Care Reimbursement at the Department of Health, he was the person responsible for reviewing the add-on fee rates which the defendants calculated using data and methodology supplied by the Department of Health, which rates were subsequently certified by the Department. The formula for determining the rates was to take the total premium costs for the excess malpractice insurance for a given hospital for the applicable rate year and to divide that total by the expected number of private sector in-patient discharges at that hospital. The resulting per patient rate was the amount the defendants were required to pay for insured patients discharged from the hospital during the rate year.
According to the defendants, the Pool took in more than $2 billion in premiums by the end of 1996 and only $1 million in claims were paid by the excess insurers. The program was so overfunded that twice the Legislature raided the Pool for a total of $1 billion that was paid into the State General Fund. Eventually, the Legislature mandated that the program operate on a self-funded basis beginning on July 1, 1997 (Insurance Law § 5517-a).
This action was commenced by the filing of a summons and complaint on December 30, 1999. An amended complaint, which is the subject of this motion, was subsequently served. In a single cause of action making reference to many legal theories, the plaintiffs assert that the defendants failed to make payments required by the statute for the period of 1986 to 1997 in the total sum of $74,631,069. The defendants contend that, with a few minor exceptions, they have made every payment required pursuant to the rates certified by the Commissioner. The defendants have moved to dismiss upon various legal grounds, and after hearing extensive oral argument the court gave written notice to the parties that the motion was being accorded summary judgment treatment. The parties were afforded the opportunity to make further submissions, and after considering the extensive motion record and the applicable *256 law the court concludes that the plaintiffs do not have a viable cause of action because the malpractice reform legislation does not create a private cause of action and at common law health insurers had no duty to pay the medical malpractice insurance premiums of doctors and dentists who rendered medical care to their insureds.
The Court of Appeals has directed that in deciding whether a statute gives rise to a private cause of action, “the essential factors to be considered are: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme” (Sheehy v Big Flats Community Day, 73 NY2d 629, 633). In enacting the reform legislation, the Legislature stated that the
“upward pressures on already high malpractice premiums continue to threaten the public health by discouraging physicians and dentists from initiating or continuing their practice in New York and by contributing to the rising cost of health care as premium costs are passed along to health care consumers.
“[The purpose of the act is to] reduce the cost of malpractice insurance * * * [and] significantly reduce physician and health care system costs” (L 1986, ch 266, § 1).
The foregoing language establishes that the class for whose benefit the legislation was enacted was doctors and dentists, with the public benefitting indirectly through lower health care costs. The court finds nothing in the statutory language indicating a legislative purpose to benefit excess malpractice insurance companies. The plaintiffs’ argument that they should be included in the class protected because the Third Department accorded the defendants standing to bring a CPLR article 78 proceeding against the Superintendent of Insurance challenging the rates he had set (Matter of New York State Conference of Blue Cross & Blue Shield Plans v Muhl, 253 AD2d 158) lacks merit as standing to challenge an administrative determination made under a statute affecting the petitioner is a separate issue from whether a person should have a private cause of action for money damages because he or she or it is among the class the statute was designed to benefit. The distinction is made clear in the case of Board of Mgrs. v Fairways at N. Hills (150 AD2d 32, 38), in the following language: “Clearly, section 339-dd merely confers standing on a condominium’s board of managers to maintain an action that *257 is recognized at common law or was created by statute. This provision does not create any new cause of action. In short, it gives standing, not a cause of action * * * [The statute] cannot be construed to give the condominium’s board of managers standing to bring an action which does not currently exist.”
The malpractice reform legislation may well have, conferred standing for the plaintiffs to pursue an already existing remedy (an article 78 proceeding challenging an adverse administrative determination) as the Third Department ruled with respect to the defendants in the Muhl case. However, standing to pursue an existing remedy is different from being within the class protected for the purpose of creating a new private cause of action for money damages. These plaintiffs are not within the class the legislation was designed to benefit.
Turning to the second prong of the test, allowing this suit to go forward would not promote the legislative purpose underlying the malpractice reform legislation. The purpose of the legislation was to reduce health care costs. This motion record demonstrates that the Legislature determined that the Pool had sufficient funding to be self-sustaining in providing the excess malpractice insurance when it decided to end all contributions to the Pool on July 1, 1997. In other words, the Pool did not need any more money from the defendants in order to meet the purpose of the legislation. Compelling the defendants to pay over to the plaintiffs $74,600,000 of unnecessary premiums is not going to meet the statutory purpose of reducing health care expenses, as those payments would in some manner be passed along to health care consumers.
As to the third prong of the test, the court fails to discern how the creation of a cause of action would be consistent with the legislative scheme. The statutes and implementing regulations create a complex system bringing antagonistic parties together with their financial duties to each other being determined and managed by the Superintendent of Insurance and Commissioner of Health. Permitting private litigation of this nature, to which the Superintendent and Commissioner are not parties, will place the courts in the position of upsetting that complex system, without the benefit of the expertise of the administrators charged with implementing the legislation. For instance, the motion is supported by the affidavit of Mr. Gahan giving the court one construction of how the program worked, and the motion is opposed by an affidavit of Mr. Anderman, the Department’s Deputy Director for Health Care Financing from 1982 to March of 1995, giving a different *258 construction. The executive branch should speak in one voice upon technical issues of the complex nature of those before the court, and would do so if the parties were left to their traditional article 78 remedies, as the Superintendent and the Commissioner would be parties and would give the involved court the official construction of the statute made by the heads of the agencies charged with implementing it. Upon consideration of the three factors to be used in deciding whether a private cause of action should be recognized, the court holds that the medical malpractice reform legislation under review does not create a private cause of action.
The plaintiffs attempt to get around the lack of a private cause of action purportedly created by the legislation by referring in the single cause of action pleaded in the amended complaint to common-law indemnification, unjust enrichment, and constructive trust. “[M]ere attempts at ‘artful pleading’ to circumvent this bar against private actions” will not be countenanced by the courts, and such theories of recovery will be dismissed (Walts v First Union Mtge. Corp., 259 AD2d 322). To establish a common-law cause of action the plaintiffs must identify to the court a common-law duty owed by the defendants to the plaintiffs that did not arise out of the applicable statute (Mark G. v Sabol, 93 NY2d 710, 726, 727). These plaintiffs have not pointed to any common-law duty on the part of a health insurer to pay the excess malpractice insurance premiums of doctors and dentists who are affiliated with hospitals at which the insureds have received treatment, and this court’s own research has not revealed such a duty. Likewise, the conclusory allegations that plaintiffs are intended third-party beneficiaries of the defendants’ health insurance policies are not supported by the evidentiary proof in the record (Rosenheck v Calcam Assocs., 233 AD2d 553). Consequently, the action must be dismissed as the plaintiffs have not demonstrated the existence of a viable cause of action. In view of that determination, the court does not reach the other issues raised in the motion record. Finally, the court notes that the plaintiffs were not without a judicial remedy as witnessed by their 1994 article 78 proceeding to compel the Superintendent and Commissioner to collect payments due to the Pool.