**Gerald D. BRODER, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**CABLEVISION SYSTEMS CORPORATION and CSC Holdings, Inc., Defendants.**

**No. 04 CIV. 154(DC).**

United States District Court, S.D. New York.

Aug. 11, 2004.

552

554

Wechsler Harwood LLP by William R. Weinstein, Robert I. Harwood, New York, NY, for Plaintiff.

Kronish Lieb Weiner & Hellman LLP by Celia Goldwag Barenholtz, Ari M. Berman, New York, NY, for Defendant.

### MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff Gerald D. Broder, a New York City resident, maintains a summer house in Bridgehampton, New York, where he subscribes to cable television services from defendant Cablevision Systems Corporation ("Cablevision"). Although he uses his Bridgehampton house primarily in the summer, since 1997, with the exception of one year, he has paid full rates for the cable services year-round. He recently learned that Cablevision offers a reduced Winter Season rate, which is not advertised and which is offered only when a customer requests that cable service be suspended for the winter.

In this putative class action for breach of contract, violations of New York General Business Law § 349 (the "GBL"), common law fraud, and unjust enrichment, Broder sues Cablevision and its holding company, CSC Holdings, Inc. ("CSC"), for damages and declaratory relief. Plaintiff alleges that defendants failed to (i) provide uniform cable service rates as required by 47 U.S.C. § 543(d) and (ii) notify plaintiff of rates as required by § 224–a of the New York Public Service Law (the "PSL").

Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Plaintiff moves,

pursuant to 28 U.S.C § 1292(b), for certification of an interlocutory appeal of this Court's April 2, 2004 denial of plaintiff's motion to remand this action to state court, where it was originally filed before it was removed to this Court on February 23, 2004. For the reasons that follow, defendants' motion is granted and the complaint is dismissed. Plaintiff's motion is denied as moot.

## STATEMENT OF THE CASE

### A. The Facts

As alleged in the complaint, the facts are as follows:

#### 1. The Parties

Broder is a resident of the city, county, and State of New York, and a long-time household subscriber to Cablevision's cable services for his summer residence in Bridgehampton. (Compl.¶ 6). From December 19, 1997 to the present (the "putative class period"), with the exception of the 2002 Winter Season,[1] Broder has been required to pay full rather than Winter Season rates for his cable services provided by Cablevision to his summer residence. (Id.). Plaintiff received the Winter Season rates during the 2002 Winter Season when he requested them, but the next year he was again charged regular rates until at least December of that Winter Season. (Id. ¶ 30). Plaintiff knows of another Cablevision customer who was receiving the winter rates during the 2003 Winter Season. (Id.).

Cablevision provides cable television service to approximately three million households in the New York metropolitan area. (Id.). There is no effective competition from other cable service providers for the services provided by Cablevision to its customers in its service areas in the New York metropolitan area. (Id.).

#### 2. Cable Packages

Cable television programming is typically offered in a package of services. (Id. ¶ 16). Cablevision has structured its cable system into service tiers, with each progressive tier offering more expensive groupings of increased program offerings. (Id. ¶ 17). According to Cablevision's semi-annual rates brochure, the Broadcast Basic service tier costs $10.50 monthly, and the next highest service tier, Family Cable, costs $42.48 monthly. (Id. ¶ 19).

From the beginning of or before the putative class period, Cablevision has had a discount rate package designed to enable the owners of summer homes to maintain their cable service at substantially reduced rates during the Winter Season. (Id. ¶ 20). The Winter Season rates during the putative class period have been $5.00 per month for Basic Cable and $15.00 per month for Family Cable. (Id. ¶ 21). The Winter Season rates automatically revert back to the regular programming package on May 1st. (Id.).

Cablevision has failed to notify some of its customers with summer residences about the Winter Season rates. (Id. ¶ 29). Cablevision employees are instructed by Cablevision to advise customers about the existence of the Winter Season rates only if the customers request that their cable service be turned off during the Winter Season. (Id. ¶ 31).

### B. Procedural History

Broder filed this action on December 19, 2003 in the Supreme Court of the State of New York, New York County. Cablevision removed the action to this Court on February 23, 2004. Broder moved to re-

---

**1.** Cablevision's Winter Season runs from November 1st through April 30th. (Compl.¶ 20).

mand the action to state court on March 5, 2004. This Court denied Broder's motion in a ruling from the bench on April 2, 2004.

These motions followed.

## DISCUSSION

### I. Cablevision's Motion to Dismiss

#### A. Applicable Law

##### 1. Fed.R.Civ.P. 12(b)(6)

On a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. *Id.* Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

##### 2. Contracts

##### a. Breach of Contract

■■■ For a contract to be valid under New York law,[2] there must be an offer, acceptance, and consideration. *Oscar Prod., Inc. v. Zacharius,* 893 F.Supp. 250, 255 (S.D.N.Y.1995). To prevail on a claim for breach of contract under New York law, a plaintiff must prove "(1) the existence of an agreement between the plaintiff and defendant; (2) due performance of the contract by the plaintiff; (3) breach of

the contract by the defendant; and (4) damages resulting from the breach." *Tagare v. NYNEX Network Sys. Co.,* 921 F.Supp. 1146, 1149–50 (S.D.N.Y.1996).

##### b. Contract Construction

■■■ In a contract case, the court's "primary objective is to give effect to the intent of the parties as revealed by the language they chose to use." *Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992). The court's first task is to determine whether the language of the contract is ambiguous. *See Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 67 F.3d 435, 443 (2d Cir.1995). Contractual language is unambiguous if it has "a definite and precise meaning," and "there is no reasonable basis for a difference of opinion" as to its interpretation. *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1095 (2d Cir. 1993) (quoting *Breed v. Ins. Co. of North America,* 46 N.Y.2d 351, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280 (1978)).

■■■ Conversely, contractual language is ambiguous if a reasonably intelligent and objective person who considers the language in the context of the entire agreement and who is aware of the general customs, practices, usages, and terminology of the industry can reach more than one interpretation. *Nowack v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1192 (2d Cir.1996); *Space Imaging Europe, Ltd. v. Space Imaging L.P.,* 38 F.Supp.2d 326, 334 (S.D.N.Y.1999). Any ambiguity in a contract should be "construed most strongly against the party who prepared it." *67 Wall St. Co. v. Franklin Natl. Bank,* 37 N.Y.2d 245, 249, 371 N.Y.S.2d 915, 333 N.E.2d 184 (1975).

---

2. Both parties apply New York law and the key facts occurred in New York. Accordingly, this Court applies New York law.

### c. *Covenant of Good Faith*

■■ The covenant of good faith is an implicit part of all contracts. *Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995). The implied covenant protects against a party from destroying "the right of the other party to receive the fruits of the contract." *Id.* (quoting *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163 (1933)). Courts, however, "have declined to find that the implied covenant of good faith and fair dealing adds to the contract a substantive provision not included by the parties." *Geren v. Quantum Chem. Corp.*, 832 F.Supp. 728, 732 (S.D.N.Y.1993).

### B. *Application*

Cablevision seeks to dismiss all of plaintiff's claims for failure to state a claim. I address each claim in turn.

### 1. *Breach of Contract*

Broder alleges breach of both an express contract and an implied covenant.

### a. *Express Breach*

■ Cable operators, such as Cablevision, are subject to 47 U.S.C. § 543(d), which requires cable operators without "effective competition" to offer their programming service rates on a uniform basis throughout the geographic areas in which cable services are provided. Moreover, PSL § 224-a requires cable operators to "provide to each of [their] subscribers at the time of the initial subscription and at

least semi-annually thereafter a · written description ... of all programming and other services offered on the cable television system[s] and of the rates and charges relating to such programming and other services."

■ Paragraph 16 of the Customer Agreement states: "[r]ates for the installation of service or equipment and rates for programming or other services are subject to change in accordance with applicable law." (Customer Agreement at 2).[3] Broder alleges that Paragraph 16 incorporates §§ 543(d) and 224-a and that Cablevision breached the Customer Agreement when it failed to provide uniform rates as required by § 543(d) and failed to notify him of the Winter Rates as required by § 224-a. (Compl.¶ 36).

Cablevision argues that Paragraph 16 of the Customer Agreement is unambiguous as neither § 543(d) nor § 224-a was expressly incorporated into Broder's Customer Agreement, and thus Cablevision's alleged violations of those statutes could not afford Broder a cause of action. (Def. Mem. at 5).[4] Cablevision further argues that even if the statutes were a part of the Customer Agreement, the limitations contained within the statutes, such as the absence of private rights of action thereunder, would preclude Broder's claims. (*Id.* at 6–9). Broder argues, however, that New York law permits parties to incorporate statutes into a contract by reference and enforce the contract even if the statutes · do not allow for a private right of action. (Pltf. Mem. at 6–7).[5]

---

3. In addition to the complaint, the Court considers the customer agreement dated April 26, 2003 between Cablevision and Broder. (Exh. A to Affidavit of Marti Green). This document is referred to in the complaint and thus is properly considered on a Rule 12(b)(6) motion.

4. "Def. Mem." refers to Defendants' Memorandum in Support of Their Motion to Dismiss dated April 16, 2004.

5. "Pltf. Mem." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss dated May 26, 2004.

The issue thus presented is whether Paragraph 16 provides that the provisions of the applicable statutes are incorporated into the Customer Agreement. I conclude that Paragraph 16 does not so provide.

First, Paragraph 16 does not by its terms incorporate the statutes. It simply does not provide, in words or substance, that all provisions of "applicable law" are incorporated into the Customer Agreement as terms thereof. The words do not evidence an intent on the part of the customer and Cablevision to incorporate all provisions of all applicable statutes.

Second, Paragraph 16, on its face, is merely a provision by which Cablevision reserves the right to change prices "in accordance with applicable law." In other words, Paragraph 16 explicitly gives Cablevision the right to seek increases in its rates for services and equipment, from time to time, to the extent permitted by law. Paragraph 16 thus provides Cablevision with protection from the argument that it is contractually bound to maintain its rates at the levels in existence when a particular customer entered into the customer agreement. A reasonably intelligent and object reader could not construe Paragraph 16 as providing for anything more.

■ Third, even assuming the language of Paragraph 16 is ambiguous, plaintiff's reading of the language is too broad, and would undermine not only the intent of the parties but the legislative intent underlying §§ 543(d) and 224–a.

Broder does not dispute Cablevision's claim that neither § 543(d) nor § 224–a allows for a private right of action.[6] Accordingly, the Second Circuit's decision in *Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir.2003), is directly applicable here. In *Grochowski*, construction workers had contracts that expressly incorporated the wage rates laid out in the Davis–Bacon Act, 40 U.S.C. § 276a et seq. (the "DBA"). The DBA required federal contractors to pay certain wage rates, but did not allow for a private right of action. When the workers were not paid in accordance with the DBA, they sued for breach of contract. The Second Circuit held that "the plaintiffs' state-law claims are indirect attempts at privately enforcing the prevailing wage schedules contained in the DBA." *Grochowski*, 318 F.3d at 86. The Court determined that allowing "a third-party private contract action aimed at enforcing those wage schedules would be inconsistent with the underlying purpose of the legislative scheme and would interfere with the implementation of that scheme to the same extent as would a cause of action directly under the statute." *Id.* (internal quotations omitted).[7]

---

**6.** The courts have uniformly ruled that § 543(d) does not create an implied private right of action. *See, e.g., Hahn v. Rifkin/Narragansett South Florida CATV Ltd. P'ship*, 941 F.Supp. 1196, 1201–02 (S.D.Fla.1996); *Com. of Ky. ex rel Gorman v. Comcast Cable of Paducah, Inc.*, 881 F.Supp. 285, 287–288 (W.D.Ky.1995); *In re Comcast Corp. Cable TV Rate Regulation*, No. Civ. A. 93–6628, 1994 WL 622105, at *5 (E.D.Pa. Nov.10, 1994). Likewise, the New York State Supreme Court, Westchester County, has held that PSL § 224–a does not provide a private right of action. *Tepper v. Cablevision Sys. Corp.*, 3/30/2004 N.Y.L.J. 19 (col.3) (S.Ct.Westch.Co. Mar. 11, 2004).

**7.** Broder claims that New York law allows breach of contract actions for violations of statutes incorporated into contracts, even if those statutes do not allow for a private right of action. (Pltf. Mem. at 5–7). He cites *Flagg v. Yonkers Savings & Loan Ass'n*, in support of this proposition. 307 F.Supp.2d 565 (S.D.N.Y.2004). *Flagg*, however, holds that the directives of a preempted state statute can be incorporated into a contract if done so expressly. *Id.* at 583. It does not hold that parties are free to incorporate any federal

As neither § 543(d) nor § 224–a provides for a private right of action, allowing Broder to sue Cablevision based on these statutes would interfere with legislative intent. It would let Broder make an impermissible "end run" around the limitations the legislatures set for § 543(d) and § 224–a. *Id.* Moreover, if Broder's rights under the statutes have been violated, he is not without a remedy—he can register an administrative complaint with the Public Service Commission (the "PSC") or the Federal Communications Commission (the "FCC") and pursue his administrative remedies before those agencies. *See Tepper;* N.Y. Pub. Serv. Law § 224–a .7.(a) (2004) (providing aggrieved customers administrative remedies before the PSC); 47 C.F.R. § 76.7 (2004) (subscriber may file petition or complaint to the FCC seeking relief); 47 C.F.R. § 76.984 (2004) (subscriber may bring claim before the FCC under the Cable Act's uniform rates provision).

In short, I hold that paragraph 16 of the Customer Agreement did not expressly incorporate §§ 543(d) and 224–a such as to contractually obligate Cablevision to offer Winter Rates to all customers and to contractually notify all customers of the availability of such rates. Accordingly, I conclude that Broder fails to state a claim for breach of contract. To the extent Broder has been aggrieved, his recourse is to seek relief administratively—through the PSC or FCC.

### b. *Implied Breach*

■ Broder notes that all contracts are governed by the implied covenant of good faith. (Pltf. Mem. at 8). He claims that Cablevision breached the covenant, and thus the contract, by acting arbitrarily in

statute, however, and notes that federal law can specifically preempt a breach of contract

determining who would receive the Winter Rates. (*Id.*).

■ Courts "have declined to find that the implied covenant of good faith and fair dealing adds to the contract a substantive provision not included by the parties." *Geren,* 832 F.Supp. at 732. Because the covenant of good faith cannot add a substantive provision to a contract, it cannot enlarge a party's rights to create a private right of action where none exists. Accordingly, Broder fails to state a claim for breach of contract based on this theory.

### 2. *GBL § 349*

■ GBL § 349 prohibits deceptive acts in the conduct of any business. N.Y. Gen. Bus. § 349(a). To violate GBL § 349, a defendant must mislead the plaintiff in some material way. *See Stutman v. Chemical Bank,* 95 N.Y.2d 24, 709 N.Y.S.2d 892, 895, 731 N.E.2d 608, (2000). GBL § 349 "does not need to be based on an independent private right of action since the statute applies to all deceptive acts or practices declared to be unlawful." *Farino v. Jiffy Lube International, Inc.,* 298 A.D.2d 553, 748 N.Y.S.2d 673, 673 (2d Dep't 2002)(internal quotations omitted). GBL § 349, however, does not provide a mechanism for individuals to enforce *all* state and federal law, and it cannot be used to circumvent the lack of a private cause of action under a statutory scheme. *See Conboy v. AT & T Corp.,* 241 F.3d 242, 258 (2d Cir.2001) (holding that plaintiffs cannot thwart legislative intent by couching a claim based on a statute without a private right of action as a GBL § 349 claim); *see also Louros v. Cyr,* 175 F.Supp.2d 497, 518 (S.D.N.Y.2001).

action. *Id.*

Broder claims that Cablevision's alleged violations of § 543(d) and § 224-a constitute materially deceptive acts or practices in violation of GBL § 349. (Compl.¶ 41). As these statutes do not provide for a private right of action, allowing this claim to proceed on this basis would thwart legislative intent. *See Conboy,* 241 F.3d at 258. Accordingly, Broder fails to state a claim for a violation of GBL § 349 based on this theory.

Broder also argues that his GBL § 349 claim is not premised exclusively on violations of § 543(d) and § 224-a. (Pltf. Mem. at 10). The complaint, however, is devoid of any allegations of deception beyond the violations of § 543(d) and § 224-a. (Compl. at ¶¶ 40-44). Accordingly, Broder fails to state a claim under GBL § 349.

### 3. *Common Law Fraud and Unjust Enrichment*

■ Broder's third and fourth causes of action are for common law fraud and unjust enrichment, based on Cablevision's state law duty to disclose as set forth in § 224-a. (Pltf. Mem. at 12-15).

■ Attempts to circumvent the bar against private actions through artful pleading "will not be countenanced by the courts, and such theories of recovery will be dismissed." *HANYS Services, Inc. v. Empire Blue Cross and Blue Shield,* 187 Misc.2d 253, 721 N.Y.S.2d 750, 753 (2001). Further, "[t]o establish a common law cause of action the plaintiffs must identify to the court a common law duty owed by the defendants to the plaintiffs that did not arise out of the applicable statute." *Id.*

Broder has not pointed to any common law duty on the part of a cable provider to disclose to all customers the availability of its Winter Season rates, and the Court's own research has not uncovered any such common law duty. Accordingly, Broder may not make an end-run around legislative intent by using common law claims to create a private right of action where none exists. Broder's third and fourth causes of action are therefore dismissed as well.

### II. *Broder's Motion for Certification for Interlocutory Appeal*

■ As the complaint is dismissed, Broder's motion for certification of this Court's April 2, 2004 ruling for interlocutory appeal is denied as moot. Broder may appeal from the final judgment to be entered in this case now.

### CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted and the complaint is dismissed, with prejudice. The Clerk of the Court shall enter judgment accordingly and close this case. Broder's motion for certification for an interlocutory appeal is denied as moot.

SO ORDERED.