[737 NYS2d 140]

HANYS Services, Inc., et al., Appellants, v Empire Blue Cross & Blue Shield et al., Respondents.

Third Department, January 31, 2002

**APPEARANCES OF COUNSEL**

*Iseman, Cunningham, Riester & Hyde LLP,* Albany (*Michael J. Cunningham* of counsel), for HANYS Insurance Company Inc. and others, appellants.

*Le Boeuf, Lamb, Greene & MacRae,* Albany (*Robert Alessi* of counsel), for Medical Liability Mutual Insurance Company, appellant.

*Rivkin, Radler & Kremer,* Uniondale (*Evan Krinick* of counsel), for Physicians Reciprocal Insurers, appellant.

*Haskel & Cooper,* Garden City (*Adrienne Cooper* of counsel), for Academic Health Professions Insurance Association, appellant.

*Blagrave House,* Reading Berkshire (*Marvin L. Tepper* of counsel), for Frontier Insurance Company, appellant.

*Saretsky, Katz, Dranoff & Glass,* New York City (*Barry G. Saretsky* of counsel), for FFH Insurance Corporation and another, appellants.

*Hinman, Straub, Pigors & Manning PC*, Albany (*Kimberly C. Lawrence* of counsel), and *Gibson, Dunn & Crutcher LLP*, New York City (*Randy M. Mastro* of counsel), for respondents.

## OPINION OF THE COURT

PETERS, J.

Pursuant to the Medical Malpractice Reform Act (*see*, L 1985, ch 294; L 1986, ch 266 [hereinafter the Act]), an excess malpractice insurance program (hereinafter the program) was created to, inter alia, procure excess malpractice insurance for physicians and dentists practicing in this state. As part of the program, a Hospital Excess Liability Pool (hereinafter the Pool) was established, designated to receive premiums from hospitals and third-party direct payers which would, in turn, collect "add on" fees when their patients were discharged from hospitals (*see*, L 1986, ch 266, §§ 18, 40; 10 NYCRR 86-1.70, 91.4).

The Superintendent of Insurance and the Commissioner of Health were named administrators of the program. They, in turn, designated plaintiff HANYS Services, Inc. (hereinafter HSI) to administer the Pool (*see*, L 1986, ch 266, § 18) and, by agreement dated December 16, 1986, but effective retroactively to July 1, 1986, HSI was recognized as an independent contractor for the State which was precluded, by its terms, from representing itself as an employee or official of the State. As Pool Administrator, HSI would collect these premiums for distribution to malpractice insurers that provide excess coverage. The remaining plaintiffs, other than HSI, are insurance carriers that either provide or had once provided excess medical malpractice insurance pursuant to this program. Defendants are now, or once were, nonprofit private health insurers serving clients in this state. Plaintiffs allege that defendants have failed to pay the premiums they owed into the Pool in the amount of $74,631,069. Premised upon theories of unjust enrichment and breach of fiduciary duty, plaintiffs requested that Supreme Court create a constructive trust or enter a judgment for the full amount. Defendants moved to dismiss the complaint for failure to state a claim and failure to join the Superintendent and Commissioner as necessary parties.

At oral argument on the motion to dismiss, the parties were notified that Supreme Court intended to treat the motion as one for summary judgment (*see*, CPLR 3211 [c]). Despite this declaration and the parties' further submissions, the court dismissed the complaint by finding, inter alia, that the Act did not create a private cause of action in favor of plaintiffs. Plaintiffs appeal.

▮ Noting that the "[c]apacity to sue is a threshold matter allied with, but conceptually distinct from, the question of standing" (*Silver v Pataki*, 96 NY2d 532, 537), we clarify that the action was dismissed on the basis of plaintiffs' lack of authority to pursue the action and not upon standing. Although plaintiffs contend that HSI has the statutory right and duty to collect premiums for distribution to excess insurers, it is established that "[a] statutory command * * * does not necessarily carry with it a right of private enforcement by means of tort litigation" (*Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32, 38). While, concededly, the Act's legislative goals might be furthered with the establishment of a private right of action in favor of plaintiffs and its pursuit might "coalesce smoothly with the existing statutory scheme" (*id.* at 40), where, as here, a statute is silent as to the availability of a private cause of action, each part of a three-pronged analysis must first be satisfied in order to find that such private right of action may be "fairly implied" (*id.* at 38):

> "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme" (*Sheehy v Big Flats Community Day*, 73 NY2d 629, 633; *see also, Carrier v Salvation Army*, 88 NY2d 298; *Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.*, 76 NY2d 207).

While statutory authorization, as compared to implied authorization, to commence a private cause of action may, in fact, "promote statutory compliance, * * * they are born of different motivations and may produce a different allocation of benefits owing to differences in approach" (*Uhr v East Greenbush Cent. School Dist., supra* at 40).

To actualize the requisite scrutiny, we must first determine that plaintiffs are members of the class for whose benefit the program was enacted. The legislative proclamation makes clear that the goal was to implement "a comprehensive reform of the medical and dental malpractice adjudication system * * * in order to ensure the continued availability and affordability of quality health services in New York [S]tate" (L 1985, ch 294, § 1). It declared that "upward pressures on already high malpractice premiums continue to threaten the public health by discouraging physicians and dentists from initiating or continu-

ing their practice in New York and by contributing to the rising cost of health care as premium costs are passed along to health care consumers" (L 1986, ch 266, § 1). Hence, with a clearly articulated purpose, we agree that "the class for whose benefit the legislation was enacted was doctors and dentists, with the public benefitting indirectly through lower health care costs" (*HANYS Servs. v Empire Blue Cross & Blue Shield,* 187 Misc 2d 253, 256; *see, e.g.,* Governor's Mem approving L 1985, ch 294, 1985 McKinney's Session Laws of NY, at 3289).

Although plaintiffs urge a more expansive view of the Act, contending that those charged with its administration are also its beneficiaries and therefore should have the authority to challenge violations thereof (*see, Matter of New York State Conference of Blue Cross & Blue Shield Plans v Muhl,* 253 AD2d 158, 162, *lv denied* 93 NY2d 807), we reiterate that standing does not necessarily confer a right to bring an action for money damages based upon a statute (*see, Board of Mgrs. of Fairways at N. Hills Condominium v Fairways at N. Hills,* 150 AD2d 32, 38-39). Instead, the Pool, as administered by HSI, is viewed, "as a conduit for the flow of funds from [designated] payors to certain insurance carriers or trusts which actually provide the excess malpractice insurance coverage" (Insurance Department Report, Sept. 5, 1990, at 5). Hence, as reflected in its statutory provisions, legislative findings and appointment agreement, neither HSI nor the other plaintiffs were intended beneficiaries of the Act because the program was designed to decrease, not increase, insurance premiums. With plaintiffs unable to cite to any authority to yield a contrary result, we find that plaintiffs failed to satisfy the first prong of the three-part analysis necessary to establish the existence of an implied private right of action (*see, Sheehy v Big Flats Community Day,* 73 NY2d 629, 633, *supra*).

Nor do we find that HSI had the authority, as Pool Administrator, to bring this action based upon an express authorization by the Superintendent. Such authorization was not signed until five months after plaintiffs commenced the action and more than two months after defendants moved to dismiss the amended complaint. Had such authorization been timely procured, we would have still found it insufficient since the Superintendent does not have independent authority to delegate enforcement power to HSI, as a matter of law. In fact, the Act requires the Superintendent and the Commissioner to act "jointly" in its oversight (*see,* L 1986, ch 266, § 18 [5], [8]).

■ Similarly unavailing is plaintiffs' theory that because defendants had a statutory duty to make payments to the Pool

in order to finance the excess insurance policies that they issued, defendants' failure to make those payments forced plaintiffs to bear the costs of the policies. Under this theory, plaintiffs contend that they were entitled to pursue this action under the equitable doctrine of implied indemnity.* " 'The right to indemnity, as distinguished from contribution, is not dependent upon the legislative will. It springs from a contract, express or implied, and full, not partial, reimbursement is sought' " (*McDermott v City of New York*, 50 NY2d 211, 216, quoting *McFall v Compagnie Maritime Belge [Lloyd Royal] S.A.*, 304 NY 314, 327-328). It is clear that although plaintiffs, defendants and the Pool are all part of the larger excess insurance program, they have distinct duties. Plaintiffs' act of issuing the policy is not the duty of either defendants or the Pool and defendants' sole responsibility to pay the "add on" fee collected from their patients into the Pool is not a duty of plaintiffs. Hence, it cannot be found that plaintiffs and defendants had a common duty to the recipients of the excess insurance policies or that plaintiffs accepted a duty that was owed by defendants due to "an immediate necessity to protect 'public decency, health or safety' " (*City of New York v Lead Indus. Assn.*, 222 AD2d 119, 125, quoting Restatement of Restitution § 115).

We also find that plaintiffs are unable to demonstrate evidence of either a contract between defendants and unnamed hospitals of which plaintiffs could be found to be an intended third-party beneficiary (*see, Dubroff v Evergreen Bank, Natl. Assn.*, 265 AD2d 644, 645) or the elements necessary for the establishment of a constructive trust (*see, Sharp v Kosmalski*, 40 NY2d 119, 121). Having reviewed and rejected the remaining issues raised herein, we affirm.

CARDONA, P.J., MUGGLIN, ROSE and LAHTINEN, JJ., concur.

Ordered that the order is affirmed, without costs.

---

* The concept of implied indemnification is a recognition that " '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity' " (*McDermott v City of New York*, 50 NY2d 211, 217, quoting Restatement of Restitution § 76).