418 F.3d 187
 Gerald D. BRODER, individually and on behalf of all others similarly situated, Plaintiff-Appellant,
v.
CABLEVISION SYSTEMS CORPORATION and CSC Holdings, Inc., Defendants-Appellees.
Docket No. 04-4932-CV.
 United States Court of Appeals, Second Circuit.
 Argued: June 13, 2005.
 Decided: August 11, 2005.
 
 1
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED William R. Weinstein, Wechsler Harwood LLP, New York, N.Y. (Robert I. Harwood, on the brief), for Plaintiff-Appellant.
 
 
 2
 Celia Goldwag Barenholtz, Kronish Lieb Weiner & Hellman LLP, New York, N.Y. (Ari M. Berman, Maxine Sleeper, on the brief), for Defendants-Appellees.
 
 
 3
 Before: CABRANES and RAGGI, Circuit Judges, and SAND, District Judge.*
 
 
 4
 SAND, District Judge.
 
 
 5
 Gerald D. Broder ("Broder") appeals from a judgment of the United States District Court for the Southern District of New York (Denny Chin, District Judge), dismissing his putative class action against Defendants-Appellees Cablevision Systems Corporation and CSC Holdings, Inc. (collectively "Cablevision") following removal of that action from state court.[1] Broder alleged that by extending a reduced "Winter Season" rate to certain customers without offering or even disclosing it to others, Cablevision had violated the uniform rate requirement of 47 U.S.C. § 543(d)[2] and the disclosure requirement of Section 224-a(4) of the New York Public Service Law, and thereby incurred liability pursuant to various state-law causes of action. Cablevision removed the action on the ground that Broder's claims raised a federal question, to wit, whether Cablevision had violated 47 U.S.C. § 543(d).
 
 
 6
 On this appeal, Broder challenges both the district court's determination that it had removal jurisdiction, and its ultimate dismissal of his complaint for failure to state a claim. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that both removal and dismissal were proper, and we affirm the judgment of the district court.
 
 BACKGROUND
 
 7
 Cablevision, a provider of cable television services, offers several "tiers" of service: Basic Cable, Family Cable, and further levels of premium "Optimum TV." At the time the complaint in this case was filed, the Basic Cable rate was $10.50 per month and the Family Cable rate was $42.48 per month.
 
 
 8
 Broder alleges that during and perhaps prior to the period beginning six years before the filing of the complaint in this action (the "Class Period"), Cablevision offered certain customers a discounted rate in the "Winter Season" running from November through April of each year. This rate was "designed to enable the owners of summer homes to maintain their cable service at a substantially reduced rate during the Winter Season ... when customers use their summer residences only sporadically at most." Compl. ¶ 20. Customers receiving the Winter Season rates were charged only $5 per month for Basic Cable and $15 per month for Family Cable.
 
 
 9
 Section 543(d) of Title 47, United States Code, mandates that a cable operator not subject to "effective competition" as defined in the statute "shall have a rate structure, for the provision of cable service, that is uniform throughout the geographic area in which cable service is provided over its cable system." 47 U.S.C. § 543(d); see 47 U.S.C. § 543(l)(1) (defining "effective competition"). Section 224-a(4) of the New York Public Service Law ("PSL") requires that a cable television company such as Cablevision
 
 
 10
 provide to each of its subscribers at the time of the initial subscription and at least semi-annually thereafter a written description, materially accurate as of the first day of the previous month, of all programming and other services offered on the cable television system and of the rates and charges relating to such programming and other services[.]
 
 
 11
 N.Y. Pub. Serv. Law § 224-a(4)(a) (Consol.2005). Cablevision, it is alleged, has never included its Winter Season rates in the brochure it distributes pursuant to PSL § 224-a(4). Nor has it uniformly notified customers with summer residences of the existence of the Winter Season rates in any other fashion. Instead, Cablevision has instructed its employees "to advise customers about the existence of the Winter Season rates for their summer residences only if the customers request that their cable service be turned off completely during the Winter Season." Compl. ¶ 31.
 
 
 12
 Broder subscribes to Cablevision's services at his summer residence in Suffolk County, New York. "In a number of years during the Class Period," he alleges, "[he] was required to pay full rather than Winter Season rates" for these services. Compl. ¶ 6. He was unaware of the existence of the Winter Season rates until he found out about them from a friend who had received them.
 
 
 13
 On December 19, 2003, Broder filed a class action complaint against Cablevision in New York State Supreme Court, New York County. The members of the putative class were those persons who, during the Class Period, "subscribed to Cablevision for cable television services for their summer residences and were charged ... full rates rather than substantially reduced Winter Season rates for Basic Cable or Family Cable service," due to Cablevision's allegedly wrongful failure to advise them that the Winter Season rates were available. Compl. ¶ 8. On behalf of himself and the class, Broder asserted what were styled as four distinct causes of action, all arising out of the non-uniform provision and nondisclosure of the Winter Season rates.
 
 
 14
 Broder's first listed cause of action, for breach of contract, alleges that Cablevision violated the terms of its uniform customer agreement which provides, according to Broder, that "all of [Cablevision's] rates and any changes in those rates will be `subject to applicable law.'" Compl. ¶ 27. Cablevision, the complaint asserts, breached that agreement with Broder and the other class members "by failing to provide them with the uniform rates required by 47 U.S.C. § 543(d) and by failing to provide them with the notice of the Winter Season rates as required under PSL § 224-a(4)." Compl. ¶ 36. These failures are also said to have breached the implied covenant of good faith and fair dealing.
 
 
 15
 Broder's second listed cause of action asserts violations of Section 349 of the New York General Business Law ("GBL"). Specifically, Broder alleges that "Defendants' conduct in failing to provide plaintiff and the Class with the uniform rates required by 47 U.S.C. § 543(d) and/or with the notice of the Winter Season rates as required under PSL § 224-a(4) constitutes materially deceptive acts or practices" which occur in New York commerce and affect the public interest so as to fall under GBL § 349. Compl. ¶ 41.
 
 
 16
 The third cause of action listed in the complaint is for common-law fraud. It is alleged that
 
 
 17
 Defendants were obligated under PSL § 224-a(4), but knowingly and willfully failed, to provide "materially accurate" information concerning the existence and availability of the Winter Season rates to plaintiff and the Class, and thereby materially misrepresented the rates to which plaintiff and the Class were entitled as Cablevision subscribers with summer residences.
 
 
 18
 Compl. ¶ 46. It is further alleged that plaintiff and the class can be presumed to have reasonably relied on this misrepresentation, and were damaged thereby.
 
 
 19
 The fourth cause of action listed in the complaint is for unjust enrichment. It states that "Defendants have been unjustly enriched at the expense of and to the detriment of plaintiff and the Class by wrongfully charging and collecting cable programming fees from them in excess of the substantially reduced Winter Season rates made available to only a relative few of Cablevision's customers with summer residences," and that Defendants' retention of the monies received through this conduct "violates fundamental principles of justice, equity and good conscience." Compl. ¶ 51.
 
 
 20
 In addition to seeking damages, Broder requests a declaratory judgment and an injunction. The declaratory judgment sought would declare that
 
 
 21
 Cablevision's actions in connection with its failure and [sic] to charge uniform Winter Season rates to plaintiff and the Class and to advise them of the existence of the Winter Season rates violates 47 U.S.C. § 543(d) and PSL § 224-a(4) and the customer agreements between Cablevision and plaintiff and the Class and the covenant of good faith and fair dealing implied thereunder, as well as GBL § 349, and constitutes fraud and/or unjust enrichment[.]
 
 
 22
 Compl. ¶ C. The injunction sought would "[e]njoin[] defendants permanently from failing to charge Winter Season rates uniformly to plaintiff and the Class and to advise them of the availability of the Winter Season rates, or otherwise violating Cablevision's customer agreement and GBL § 349." Compl. ¶ D.
 
 
 23
 Following Cablevision's removal of the action to federal court on February 23, 2004, Broder moved pursuant to 28 U.S.C. § 1447(c) to remand the case to state court for lack of subject-matter jurisdiction. In an oral decision on April 2, 2004, the district court denied the motion, holding that federal law was an essential part of the complaint and thus federal subject-matter jurisdiction was proper. Broder then moved for an order pursuant to 28 U.S.C. § 1292(b) certifying the denial of remand for interlocutory appeal. Cablevision moved to dismiss the action under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. By an unpublished memorandum decision filed August 12, 2004, the district court granted the motion to dismiss, finding that no valid claim was stated, and denied Broder's motion for certification under § 1292(b) as moot. A judgment dismissing the complaint was entered on August 13, 2004. This appeal followed.
 
 DISCUSSION
 
 24
 "We review de novo a district court's denial of a motion to remand" a removed action. Shafii v. British Airways, PLC, 83 F.3d 566, 570 (2d Cir.1996). The same is true of a dismissal pursuant to Rule 12(b)(6). Velez v. Levy, 401 F.3d 75, 84 (2d Cir.2005).
 
 I. Denial of Motion to Remand
 
 25
 Because a holding that the district court lacked removal jurisdiction would end our inquiry, we first address the district court's denial of Broder's motion to remand the case to state court for lack of jurisdiction. Grable & Sons Metal Products, Inc., v. Darue Engineering & Manufacturing, ___ U.S. ___, ___, 125 S.Ct. 2363, 2366-67, ___ L.Ed.2d ___, ___ (2005),[3] establishes that the existence of "a cause of action created by federal law" is not a necessary condition for federal-question jurisdiction under 28 U.S.C. § 1331 or removal jurisdiction under 28 U.S.C. § 1441(a). "Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at ___, 125 S.Ct. at 2368. To answer this question, we must ascertain which portions of Broder's complaint comprise distinct "claims." A single claim over which federal-question jurisdiction exists is sufficient to allow removal. Exxon Mobil Corp. v. Allapattah Servs., Inc., ___ U.S. ___, 125 S.Ct. 2611, 2623, ___ L.Ed.2d ___ (2005) ("Allapattah"); City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 164-66, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). Where a federal issue is present as only one of multiple theories that could support a particular claim, however, this is insufficient to create federal jurisdiction. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 807-809, 811-813, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (interpreting 28 U.S.C. § 1338(a) as establishing an analogous rule, and stating that "[l]inguistic consistency" requires identical interpretations of § 1338(a) and 28 U.S.C. § 1331). But what a plaintiff presents as one "count" may be understood to encompass more than one "claim." See id. at 810, 108 S.Ct. 2166 ("Petitioners' antitrust count can readily be understood to encompass both a monopolization claim under § 2 of the Sherman Act and a group boycott claim under § 1."). The question is whether at least one federal aspect of Broder's complaint is a logically separate claim, rather than merely a separate theory that is part of the same claim as a state-law theory.
 
 
 26
 At oral argument, Broder's counsel accurately described the complaint as asserting two separate contract claims and two separate GBL claims. What is styled as a single breach-of-contract claim actually has two distinct parts: (1) a claim that Cablevision breached one provision of applicable law, incorporated by reference into the contract, "by failing to provide [Broder and the class members] with the uniform rates required by 47 U.S.C. § 543(d)," and (2) a claim that Cablevision breached another provision of applicable law, also incorporated by reference into the contract, "by failing to provide them with the notice of the Winter Season rates as required under PSL § 224-a(4)." Compl. ¶ 36. As Broder's counsel acknowledged at oral argument, we can put the state-law contract claim aside, as if it had been pleaded as a separate count; it is logically separable from the contract claim that relies on 47 U.S.C. § 543(d). Similarly, what is styled as one claim for violation of GBL § 349 is actually two: (1) a claim that Cablevision violated 47 U.S.C. § 543(d) and thereby violated GBL § 349, and (2) a claim that Cablevision violated PSL § 224-a(4) and thereby violated GBL § 349.
 
 
 27
 Any doubt that Broder brings distinct claims based on 47 U.S.C. § 543(d) is dispelled by his request for a declaratory judgment establishing that Cablevision's actions violated, inter alia, 47 U.S.C. § 543(d). One of the key characteristics of a mere "theory," as opposed to a distinct claim, is that a plaintiff may obtain the relief he seeks without prevailing on it. See Christianson, 486 U.S. at 810-813, 108 S.Ct. 2166. It is clear that Broder cannot obtain the declaratory judgment he seeks, stating in part that Cablevision violated 47 U.S.C. § 543(d), without prevailing on the issue of whether Cablevision in fact violated 47 U.S.C. § 543(d).
 
 
 28
 The claims that invoke 47 U.S.C. § 543(d) are thus separate claims for Grable purposes, and removal was proper if they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, ___ U.S. at ___, 125 S.Ct. at 2368. The first part of the test is clearly met: the claims "necessarily raise [the] stated federal issue" of whether Cablevision violated 47 U.S.C. § 543(d) as alleged. Broder's claim that Cablevision breached a contract term consisting of § 543(d) incorporated by reference, and his claim that Cablevision violated GBL § 349 by "failing to provide plaintiff and the Class with the uniform rates required by 47 U.S.C. § 543(d)," Compl. ¶ 41, both necessarily raise the issue of whether Cablevision violated § 543(d). This is apparent from the face of the complaint, without reference to any anticipated defense.
 
 
 29
 The requirement that the federal issue be "actually disputed and substantial," Grable, ___ U.S. at ___, 125 S.Ct. at 2368, is also met. Cablevision maintains that its provision of Winter Season rates did not violate the § 543(d) uniform rate requirement. Cablevision contests, inter alia, whether Broder and the class members subscribed in areas that lacked "effective competition," and whether the Winter Season rates are exempt from the § 543(d) uniformity requirement as promotional rates. These questions involve aspects of the complex federal regulatory scheme applicable to cable television rates, as to which there is "a serious federal interest in claiming the advantages thought to be inherent in a federal forum," Grable, ___ U.S. at ___, 125 S.Ct. at 2367. These federal issues are not clearly insubstantial, and Broder does not now contend that their merits would be easily resolved in his favor.
 
 
 30
 Broder argues instead that the federal issues involved in this case must necessarily be insubstantial because his suit was dismissed on state-law grounds. He draws support from Christianson's statement that jurisdiction does not exist where there are reasons "`completely unrelated'" to the potentially jurisdiction-bestowing issue why plaintiffs "`may or may not be entitled to the relief [they] see[k].'" Christianson, 486 U.S. at 812, 108 S.Ct. 2166 (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 26, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)) (alterations in original).
 
 
 31
 Yet Christianson does not stand for the proposition that any claim that could fail for a reason grounded in state law necessarily lies outside federal-question jurisdiction. In Grable itself, the district court relied on Michigan equitable principles as an alternative basis for denying the plaintiff relief. Grable & Sons Metal Prods., Inc., v. Darue Eng'g & Mfg., Inc., 207 F.Supp.2d 694, 698 (W.D.Mich.2002) ("Grable I"). It would be unusual for a state-law claim that raised a federal issue not to be subject to some conceivable state-law defense, whether based on the statute of limitations, equitable principles such as laches and unclean hands, or some other potential defect analytically prior to the federal issue at the heart of the claim. Christianson concerned alternative theories on which a claim could succeed, not alternative ways in which a claim could fail, and its language must be read in this context.
 
 
 32
 We therefore come to the final Grable requirement: the claim must be one "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, ___ U.S. at ___, 125 S.Ct. at 2368. Here, Broder emphasizes the lack of a private right of action under § 543(d).[4] Had Congress intended the federal courts to spend their time adjudicating claimed violations of § 543(d), he argues, such a right of action would have been provided. See Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 810-812, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).
 
 
 33
 The Grable Court found this last requirement to be satisfied even in the absence of a private right of action because "it is the rare state quiet title action that involves contested issues of federal law." ___ U.S. at ___, 125 S.Ct. at 2371. We think it is likely to be the rare New York breach-of-contract action or suit under GBL § 349 that seeks to assert a private right of action for violation of a federal law otherwise lacking one. Such suits are particularly unlikely to recur in light of the District Court's and our analysis on the merits of Broder's claims in this case. Thus, as in Grable, allowing federal jurisdiction here will not "materially affect, or threaten to affect, the normal currents of litigation." ___ U.S. at ___, 125 S.Ct. at 2371.
 
 
 34
 The complaint in this case therefore satisfies all three prongs of the Grable test for federal-question removal jurisdiction. We hold that the district court correctly denied Broder's motion to remand the case to state court for lack of jurisdiction.
 
 II. Dismissal for Failure to State a Claim
 
 35
 On review of a Rule 12(b)(6) dismissal, we accept the facts alleged in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir.2004). We are not limited solely to the allegations in the complaint, however. Where a plaintiff has "reli[ed] on the terms and effect of a document in drafting the complaint," and that document is thus "integral to the complaint," we may consider its contents even if it is not formally incorporated by reference. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.2002) (internal quotation marks omitted). Insofar as the complaint relies on the terms of Cablevision's customer agreement, therefore, we need not accept its description of those terms, but may look to the agreement itself.
 
 
 A. Breach of Contract Claims
 
 
 36
 The contract language relied upon in both of Broder's breach-of-contract claims, as it exists in the actual customer agreement, differs from the language alleged in the complaint. The complaint states that "[u]nder Paragraph 16 of the uniform terms of its customer agreement with each Cablevision subscriber during the Class Period, Cablevision agreed that all of its rates and any changes in those rates will be `subject to applicable law.'" Compl. ¶ 27. Paragraph 16 of the customer agreement actually provides that "[r]ates for the installation of service or equipment and rates for programming or other services are subject to change in accordance with applicable law."[5] That is, Paragraph 16 states not that rates are subject to applicable law, but that rates are subject to change in accordance with applicable law.
 
 
 37
 This difference is fatal to both of Broder's breach-of-contract claims. "Whether contract language is ambiguous is a question of law, which we review de novo." Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d Cir.1998), The general rule is that "ambiguity exists where a contract term `could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and ... is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 184 (2d Cir.2003) (quoting Morgan Stanley Group, Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir.2000) (internal quotations omitted)). But "`ambiguity is detected claim by claim,'" because "`a contract may be ambiguous when applied to one set of facts but not another.'" Id. (quoting Morgan Stanley Group, 225 F.3d at 278). Even if we assume arguendo that, as Broder suggests, the district court's interpretation of Paragraph 16 to protect only Cablevision was inappropriate because a symmetric interpretation was more consistent with New York law governing contracts of adhesion, the contract language would still unambiguously foreclose his claims.
 
 
 38
 Read as symmetrically as possible, Paragraph 16 of the customer agreement would protect Cablevision against the argument that its rates could not change even where change was otherwise permitted by law, and would protect Broder against changes in rates that were not permitted by law. That is, Paragraph 16 would provide that rates were subject to change in accordance with applicable law and not otherwise.[6]
 
 
 39
 Broder does not complain of a change in rates. Rather, Broder complains that Cablevision did not provide uniform rates and did not disclose the availability of certain rates. So far as appears from the complaint, the Winter Season rates might already have been in place for some customers when Broder and the other members of the putative class signed their customer agreements. The continued existence of the Winter Season rates may have involved no change in the overall rate structure. Even if the actions and omissions of which Broder complains violated "applicable law," therefore, it is not alleged that they necessarily constituted a change in rates contrary to that law.
 
 
 40
 Moreover, even if we assume that the Winter Season rates were created while Paragraph 16 of the customer agreement was operative, the fact that certain customers received the Winter Season rates would not have constituted a change in Broder's rates or the rates of the other class members. As to his own rates, which are the subject of the agreement between him and Cablevision, Broder complains not of a change but of a lack of change.[7] To say that something is "subject to change" in accordance with certain rules is to say that it may change, not that it definitely will. Contract language describing the circumstances under which rates are subject to change does not indicate that change is obligatory. At most, Paragraph 16 addresses circumstances under which the customer may be entitled to keep his old rates, not circumstances under which he may be entitled to have his old rates replaced by new ones.
 
 
 41
 The district court considered this case analogous to Grochowski v. Phoenix Construction, 318 F.3d 80, 85 (2d Cir.2003), which held that a state-law suit for breach of a construction contract referencing prevailing wage schedules under the Davis-Bacon Act could not avoid that Act's lack of a private right of action to enforce those wage schedules. So too here, the district court held as an alternative ground of decision, the lack of a private right of action under 47 U.S.C. § 543(d) could not be avoided via a breach of contract claim. However narrow or broad the proper interpretation of our holding in Grochowski may be, that case stands at least for the proposition that a federal court should not strain to find in a contract a state-law right of action for violation of a federal law under which no private right of action exists. The district court correctly declined to do so here. The contract claim founded on 47 U.S.C. § 543(d) was thus properly dismissed.
 
 
 42
 The contract claim founded on PSL § 224-a(4) was also correctly dismissed. PSL § 224-a(4) requires a cable company to distribute a description of its rates that is accurate as of a particular point in time, the first day of the previous month. A contract provision addressing the circumstances under which rates may change cannot easily be read to incorporate by reference a statutory requirement that rates at a particular time be accurately disclosed. PSL § 224-a(4) directs cable companies to distribute what could be described as snapshots of their rate schedules; it does not address how those rate schedules may change between snapshots. And even if we were to accept arguendo that PSL § 224-a(4) regulates the circumstances under which rates may change by requiring such changes ultimately to be reported, the fact remains that, as discussed above, Broder is not complaining of a change in his rates.
 
 
 43
 Broder's invocation of the implied covenant of good faith and fair dealing does not save either of his contract claims. The implied covenant "can only impose an obligation `consistent with other mutually agreed upon terms in the contract.'" Geren v. Quantum Chem. Corp., 832 F.Supp. 728, 732 (S.D.N.Y.1993) (quoting Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 335, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987)). It does not "add[] to the contract a substantive provision not included by the parties." Id. at 732. It therefore cannot transform an obligation to refrain from changing the customer's rates except in accordance with applicable law into an affirmative obligation to change his rates.
 
 
 B. GBL § 349 Claims
 
 
 44
 In Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir.2001), we established that a plaintiff cannot circumvent the lack of a private right of action for violation of a New York state law by pleading his claim under GBL § 349. With respect to the GBL § 349 claim based on violations of 47 U.S.C. § 543(d), the remaining question is whether Conboy extends to attempts to circumvent the lack of a private right of action for violation of a federal law, or at least the particular federal law at issue here. With respect to the GBL § 349 claim based on violations of PSL § 224-a(4), the remaining question is whether the district court correctly concluded that there was no private right of action under that state law.
 
 
 45
 Were we to hold, despite Conboy, that GBL § 349 may be used to assert a private right of action for violation of a federal law otherwise lacking one, we would essentially be attributing to the New York legislature an intent to thwart Congress's intentions on a significant scale.[8] And in this case, we would be doing so with respect to a federal law that on its face does not address deceptive or misleading behavior at all; whether a rate structure is uniform has no necessary connection to whether customers are aware of what they are paying for. If 47 U.S.C. § 543(d) may be the basis for a GBL § 349 claim asserting a private right of action, so may many other federal regulatory laws not having to do with deceptive or misleading acts.
 
 
 46
 Neither the text of GBL § 349 nor any other authority cited by Broder suggests that the New York legislature intended to cast its net so broadly. Without deciding whether Conboy's bar on circumvention applies to all federal statutes lacking a private right of action, we hold that it does apply to 47 U.S.C. § 543(d). The GBL § 349 claim relying on alleged violations of § 543(d) was thus correctly dismissed.
 
 
 47
 The GBL § 349 claim relying on PSL § 224-a(4) was also correctly dismissed. Tepper v. Cablevision Systems Corp., 19 A.D.3d 585, 797 N.Y.S.2d 131, 131-32 (2d Dep't 2005), aff'g N.Y.L.J., Mar. 30, 2004, at 19 (N.Y.Sup.Ct. Mar. 11, 2004),[9] holds that PSL § 224-a does not provide a private right of action. "As a federal court applying state law, we are generally obliged to follow the state law decisions of state intermediate appellate courts." Pentech Int'l, Inc. v. Wall St. Clearing Co., 983 F.2d 441, 445 (2d Cir.1993). In the absence of any contrary New York authority or other "`persuasive data [establishing] that the highest court of the state would decide otherwise,'" id. at 446 (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)), we will follow Tepper and conclude that there is no private right of action for violations of PSL § 224-a. Conboy therefore applies, and Broder "cannot thwart legislative intent," 241 F.3d at 258, by pleading his claim for violation of PSL § 224-a as a claim under GBL § 349.
 
 
 48
 Broder attempts to distinguish Conboy by noting that PSL § 224-a(7)(c) "specifically preserves all other rights `granted by statutory or common law to ... [any] person.'" Br. for Pl.-Appellant at 50 (alteration in original). The quoted portion of PSL § 224-a, in full, declares that "Nothing in this subdivision shall be construed to impair, alter, limit, modify, enlarge, abrogate or restrict any right granted by statutory or common law to the attorney general or any other person." N.Y. Pub. Serv. Law § 224-a(7)(c) (Consol.2005). This language does not help Broder, because he seeks to use GBL § 349 to assert a private right of action for violation of PSL § 224-a(4), rather than to assert rights that would exist independently of PSL § 224-a and could therefore be preserved by § 224-a(7)(c). Broder does not make a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under PSL § 224-a(4). He claims, instead, that "Defendants' conduct in failing to provide plaintiff and the Class ... with the notice of the Winter Season rates as required under PSL § 224-a(4) constitutes materially deceptive acts or practices" actionable under GBL § 349. Compl. ¶ 41 (emphasis added).
 
 
 49
 In applying Conboy, the district court did not impair, abrogate, or restrict any right that Broder would have had in the absence of PSL § 224-a. The district court merely refused to construe GBL § 349 as creating a private right of action for violation of PSL § 224-a, given that the latter statute did not itself provide such a private right. This refusal was not precluded by PSL § 224-a(7)(c), which even as described by Broder was intended to "preserve" rights; one cannot preserve something that does not exist.
 
 
 C. Common Law Fraud
 
 
 50
 Generally, New York law requires that "[t]o establish a common-law cause of action [a] plaintiff[] must identify to the court a common-law duty owed by the defendants to the plaintiff[] that did not arise out of the applicable statute." HANYS Servs., Inc. v. Empire Blue Cross & Blue Shield, 187 Misc.2d 253, 721 N.Y.S.2d 750, 753 (Sup.Ct.2001), aff'd, 292 A.D.2d 61, 737 N.Y.S.2d 140 (3d Dep't 2002). The putative misrepresentation that Broder alleges in his fraud claim consists solely of Cablevision's purported knowing and willful failure to comply with the disclosure requirements of PSL § 224-a(4). The complaint does not allege any other misrepresentation or violation of any common-law duty. Thus, HANYS suggests that there is no common-law fraud. But as Broder points out, HANYS does not specifically address claims of fraud, so we will not end our analysis here.
 
 
 51
 For Broder to succeed on his fraud claim, we would have to hold that knowing and willful failure to comply with PSL § 224-a(4) is, in and of itself, a misrepresentation or omission sufficient to support a claim for common-law fraud. Such a holding would be in great tension with the rule of Tepper, which we have accepted, that there is no private right of action for violation of PSL § 224-a. The logic of Conboy applies: it is unlikely that the New York legislature, while not intending to grant a direct private right of action under PSL § 224-a, did intend a private right of action to be available to anyone who took the extra step of alleging that a violation of § 224-a constituted common-law fraud. And it is unlikely that New York courts, which frown on "`artful pleading' to circumvent [a] bar against private actions," Walts v. First Union Mortgage Corp., 259 A.D.2d 322, 686 N.Y.S.2d 428, 430 (1st Dep't 1999); accord Hsin Shen v. Astoria Fed. Sav. & Loan, 295 A.D.2d 319, 744 N.Y.S.2d 336, 336 (2d Dep't 2002), would allow such an end-run around the legislature's apparent intent.
 
 
 52
 Rego Park Gardens Owners, Inc. v. Rego Park Gardens Associates, 191 A.D.2d 621, 595 N.Y.S.2d 492 (2d Dep't 1993), is instructive. There, the plaintiff asserted a cause of action for fraudulent nondisclosure based on defendant's failure to disclose information that it was required to disclose under a regulation promulgated pursuant to New York's Martin Act. Like PSL § 224-a, the Martin Act does not grant a private right of action. Vermeer Owners, Inc. v. Guterman, 78 N.Y.2d 1114, 578 N.Y.S.2d 128, 585 N.E.2d 377, 378 (1991). Rego Park held that violation of a regulation promulgated under it therefore may not be the basis for a claim of fraudulent nondisclosure, because allowing such a claim "would, in effect, impermissibly permit [plaintiff] to maintain a private cause of action for an alleged violation of the Martin Act." 595 N.Y.S.2d at 494. Here, allowing a claim of fraud by omission, based on Cablevision's failure to disclose the Winter Season rates as purportedly required by PSL § 224-a(4), would impermissibly permit Broder to maintain a private cause of action for an alleged violation of PSL § 224-a.
 
 
 53
 The only authority cited by Broder for the proposition that "a common law fraud claim involving material omissions frequently is predicated on a statutory duty to disclose," Br. for Pl.-Appellant at 52, is Small v. Lorillard Tobacco Co., 252 A.D.2d 1, 679 N.Y.S.2d 593 (1st Dep't 1998), aff'd, 94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999). Small did not involve the assertion of such a claim, and does not hold that such claims are viable under New York law.[10]
 
 
 54
 Broder is also not aided by PSL § 224-a(7)(c), which he describes as preserving rights granted by statutory or common law to any person. As discussed above, see supra Part II.B, one cannot preserve that which did not previously exist. The relevant question is not whether in enacting PSL § 224-a the legislature abolished claims for common-law fraud that would have existed in the absence of PSL § 224-a, but whether in enacting PSL § 224-a the legislature intended to create claims for common-law fraud that would not have been possible previously. PSL § 224-a(7)(c) suggests a negative answer to this latter question, as it provides that "[n]othing in this subdivision[11] shall be construed to impair, alter, limit, modify, enlarge, abrogate or restrict any right granted by statutory or common law to the attorney general or any other person." N.Y. Pub. Serv. Law § 224-a(7)(c) (emphasis added). Before PSL § 224-a was enacted, Broder obviously could not have brought a claim for common-law fraud based on an alleged violation of it; if he can do so now, then PSL § 224-a has "enlarge[d]" a right granted him by the common law. Because PSL § 224-a(7)(c) informs us that such an enlargement was not intended, we must conclude that Broder cannot bring a common-law fraud claim based solely on alleged violations of PSL § 224-a(4).
 
 
 55
 In his reply brief, Broder advances a subtler argument in support of his fraud claim. Given that "defendants affirmatively represented what their rates were in their semi-annual brochures," he says, they were under a common-law duty not to mislead by "omitting to disclose the Winter Season rates, and ... implicitly representing that there were no rates other than those disclosed." Reply Br. for Pl.-Appellant at 26. This argument suggests that Broder may have a common-law fraud claim that does not rely on PSL § 224-a, because the brochures may have been misleading even if one disregards the (statutory) reason why they were sent.
 
 
 56
 The theory put forward in Broder's reply is at least less obviously in tension with HANYS, Conboy, Rego Park, and PSL § 224-a(7)(c). But we need not determine whether it ultimately has merit, because "[a]rguments raised for the first time in an appellate reply brief are not properly before the court." D'Alessio v. SEC, 380 F.3d 112, 120 n. 11 (2d Cir.2004) (quoting United States v. Hernandez-Fundora, 58 F.3d 802, 810 n. 3 (2d Cir.1995)). In the complaint, in the memorandum of law that he submitted to the district court opposing Cablevision's motion to dismiss, and in his initial brief on appeal, Broder relied exclusively on the theory that Cablevision's alleged failure to comply with the disclosure requirement of PSL § 224-a(4) itself constituted a fraudulent misrepresentation or omission. It is too late in the day for him to shift his focus to the purportedly misleading nature of Cablevision's brochures considered independently of PSL § 224-a(4).
 
 
 57
 Our refusal to consider the theory that Broder raises only in his reply brief is not mere formalism; to do so would be unfair to Cablevision under the particular circumstances of this case. Had Broder relied in the district court on the allegedly misleading nature of the rate brochures independent of PSL § 224-a(4), Cablevision might have filed copies of the actual brochures[12] and asked that their full contents be considered, as were the contents of the customer agreements. This would have been appropriate under Chambers, and the example of the customer agreements shows us that the actual text of the brochures might well have been relevant. At the very least, if Broder had raised in his initial brief on appeal the theory that he ultimately raised in reply, Cablevision could have argued in its opposition brief that this theory was not properly supported by the complaint or not properly preserved in the district court. Broder's undue delay deprived Cablevision of these opportunities.
 
 
 D. Unjust Enrichment
 
 
 58
 When a plaintiff "does not possess a private right of action under" a particular statute, and "does not allege any actionable wrongs independent of the requirements of the statute," a "claim[] for ... unjust enrichment [is] properly dismissed as an effort to circumvent the legislative preclusion of private lawsuits for violation of the statute." Han v. Hertz Corp., 12 A.D.3d 195, 784 N.Y.S.2d 106, 107 (1st Dep't 2004); accord HANYS Servs., 721 N.Y.S.2d at 753. The parties agree that there is no private right of action under 47 U.S.C. § 543(d),[13] and we have held, following Tepper, that the same is true of PSL § 224-a(4). Because Broder "does not allege any actionable wrongs independent of the requirements of the statute[s]," Han, 784 N.Y.S.2d at 107, his claim for unjust enrichment was properly dismissed.
 
 CONCLUSION
 
 59
 We have considered Broder's other arguments and find them to be without merit. For the reasons set forth above, the judgment of the district court is affirmed.
 
 
 60
 This conclusion does not mean that Broder and the putative class he seeks to represent are without a forum for their claims. It means only that they are without a judicial forum. As the district court noted, both Congress and the New York State legislature have provided administrative agency oversight for the sorts of claims asserted here. Broder and the other members of the putative class may seek relief from the New York Public Service Commission or the Federal Communications Commission.
 
 
 
 Notes:
 
 
 *
 The Honorable Leonard B. Sand, of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Broder's Notice of Appeal also describes various interlocutory orders that are merged into the final judgment
 
 
 [2]
 Codifying Section 623(d) of the Communications Act of 1934, as added by the Cable Communications Policy Act of 1984, Pub.L. No. 98-549, sec. 2, 98 Stat. 2779, 2789, and amended by the Cable Television Consumer Protection and Competition Act of 1992, Pub.L. No. 102-385, sec. 3(a), 106 Stat. 1460, 1469, and by the Telecommunications Act of 1996, Pub.L. No. 104-104, sec. 301(b)(2), 110 Stat. 56, 115
 
 
 [3]
 Grable was issued the day of oral argument in this case. Following oral argument, the parties submitted letters regarding Grable pursuant to Fed. R.App. P. 28(j).
 
 
 [4]
 The parties agree that there is no private right of action under 47 U.S.C. § 543(d), and the district court so held. We therefore assume, without deciding, that this is correct
 
 
 [5]
 A copy of the customer agreement between Cablevision Systems Corporation and Broder is included in the record as an attachment to the Declaration of Marti Green in Support of Defendants' Motion to Dismiss. Broder has not disputed the accuracy of this copy. We must assume that the same agreement, in substance, applies to putative class members other than Broder, as it is alleged that "[t]he customer relationship between plaintiff and the Class and Cablevision was and is governed by the terms of a substantially uniform customer agreement." Compl. ¶ 35
 
 
 [6]
 The actual contract language lacks any explicit reference to the conditions under which rates arenot subject to change, which is presumably why the district court interpreted it to protect Cablevision only.
 
 
 [7]
 This is so notwithstanding Broder's allegation that he "received the reduced Winter Season rates during the first Winter Season after [he] learned of and called Cablevision about them," but not during the Winter Season in the course of which he filed his complaint. Compl. ¶ 30. That Winter Season rates terminate at the end of the Winter Season is not what Broder objects to as non-uniform or undisclosed; it is inherent in the very nature of the discount that he contends is being non-uniformly and secretly provided to certain customers. Even with respect to the Winter Season during which Broder filed his complaint, his objection is that "Cablevision still has not reduced plaintiff's rates to the Winter Season rates,"id. — in other words, his objection is that Cablevision has failed to change his rates to the Winter Season rates.
 
 
 [8]
 Broder suggests that 47 U.S.C. § 552(d) and § 558, which provide that the relevant subchapter of Title 47 of the United States Code does not preempt certain state laws, imply that Congress's intent would not be thwarted by a GBL § 349 claim based on 47 U.S.C. § 543(d). But Congress's lack of intent to preempt some state laws does not indicate an intent to confer a private right of action for violations of § 543(d). Had Congress intended to confer such a private right of action, it would have done so, and the parties agree that it did notSee supra note 4.
 
 
 [9]
 The lower court opinion inTepper, relied on by the district court and cited by Cablevision on appeal, was affirmed by the Appellate Division, Second Department, following oral argument in this case. The parties submitted letters regarding this affirmance pursuant to Fed. R.App. P. 28(j).
 
 
 [10]
 Small mentioned "common-law fraud claims [based upon]... violation of a State law duty to disclose information by means other than advertising or promotion, such as mandated disclosures to a government agency," 679 N.Y.S.2d at 603, only in a paraphrase of Lacey v. Lorillard Tobacco Co., 956 F.Supp. 956, 962-63 (N.D.Ala.1997), a case applying Alabama state law that Small cited for analysis of preemption under the federal Cigarette Labeling and Advertising Act. (Broder actually cites 679 N.Y.S.2d at 604, but that portion of Small addresses affirmative misrepresentations, not failures to disclose information.)
 
 
 [11]
 Read literally, "this subdivision" refers only to PSL § 224-a(7), not § 224-a as a wholeCf., e.g., N.Y. Pub. Serv. Law § 224-a(7)(b) (referring to "paragraph (a) of this subdivision"). But we agree with Broder's implicit conclusion that this description of the enforcement provision of PSL § 224-a as not affecting other rights effectively applies to PSL § 224-a as a whole, since that is what § 224-a(7) enforces. See N.Y. Pub. Serv. Law. § 224-a(7)(a)-(b) (referring to the penalties that can be imposed by the Public Service Commission upon a determination that "a cable television company has not complied with any provision of this section").
 
 
 [12]
 Broder introduced copies of a limited portion of the rate brochures in connection with his motion for § 1292(b) certification, but these excerpts did not show how Cablevision recited its rates and whether this manner of recitation implied that the list of rates was a complete one
 
 
 [13]
 See supra note 4.