14-2823-cr(L)
*United States v. Gomez*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of February, two thousand sixteen.

PRESENT:    BARRINGTON D. PARKER,
            DENNY CHIN,
            SUSAN L. CARNEY,
                    *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                    *Appellee*,

                    v.                                      14-2823-cr(L)
                                                            14-3740-cr(Con)

ADRIAN PINZON-GALLARDO, AKA The Mexican, ARNOLDO AVINA-ROLON, ZACARIAS CEPEDA-NUNEZ, AKA Carlos, JOEL CODERO-SANTIAGO, AKA Rivero Jose, WILSON LEMUS, JAVISH ROSA, SERGIO RUBIO, JOSE HERNANDEZ, AKA Chieto, DWIGHT BROWN, ANGEL FLORES, AKA Flaco, GABRIEL KELLY, GEORGE SOTO, ANTOVANY ACOSTA, AKA Tony, ALBERTO DELGADO, LUIS PLASENCIA,
                    *Defendants*,

RAMON GOMEZ, AKA Moncho, DAVID
CASTELLANO-NUNEZ,

Defendants-Appellants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE UNITED STATES OF
AMERICA:

S. DAVE VATTI, Robert M. Spector, Assistant
United States Attorneys, for Deirdre M. Daley,
United States Attorney for the District of
Connecticut, New Haven, Connecticut.

FOR DEFENDANT-APPELLANT
RAMON GOMEZ:

ROBERT J. BOYLE, New York, New York.

FOR DEFENDANT-APPELLANT
DAVID CASTELLANO-NUNEZ:

BRUCE R. BRYAN, Syracuse, New York.

Appeal from the United States District Court for the District of
Connecticut (Bryant, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED,**

except that they are **MODIFIED** to the extent that the fines imposed on defendants are

stricken.

Following a jury trial in the United States District Court for the District of

Connecticut, defendants-appellants Ramon Gomez and David Castellano-Nunez were

convicted of conspiracy to distribute and to possess with intent to distribute one

kilogram or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846.  Both

defendants now appeal:  Gomez from a July 31, 2014 judgment that principally

sentenced him to 120 months' imprisonment and a $50,000 suspended fine, and

Castellano-Nunez from an October 3, 2014 judgment that principally sentenced him to 120 months' imprisonment and a $17,500 suspended fine. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

We address in turn (1) the sufficiency of the evidence as to Castellano-Nunez, (2) certain evidentiary rulings, (3) Confrontation Clause violations as to Gomez, and (4) the reasonableness of defendants' fines.

**1.**  *Sufficiency of the Evidence as to Castellano-Nunez*

We review *de novo* the sufficiency of evidence, but "we will uphold the judgments of conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and 'deferring to the jury's assessment of witness credibility' and its assessment of the weight of the evidence." *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008) (citations omitted) (quoting *United States v. Bala*, 236 F.3d 87, 93 (2d Cir. 2000)).

Castellano-Nunez contends that there was insufficient evidence to prove that he joined the conspiracy or reasonably foresaw the distribution of more than one kilogram of heroin. *See United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (requiring

quantity to be reasonably foreseeable). The evidence at trial, however, demonstrated the following. Castellano-Nunez's brother, Antovany Acosta, ran a heroin distribution operation out of an apartment at 28 Maltby Place in New Haven, Connecticut. Castellano-Nunez lived there, he was arrested there, and 27 bundles of heroin were found on site when he was arrested. Further, an ongoing wiretap on Castellano-Nunez's phone revealed that he informed Acosta of potential customers, retrieved heroin from 28 Maltby Place on behalf of Acosta for customers, and negotiated directly with customers for single-digit gram quantities of heroin. Other wiretaps confirmed that Acosta, in turn, obtained "250 grams [of heroin] every 10 days" for distribution and in fact purchased that quantity (or a similar quantity) on at least five occasions between June and August 2011. Castellano-Nunez App. at 774. As Castellano-Nunez closely worked with his brother in servicing customers, a reasonable jury could have inferred that Castellano-Nunez was a member of the heroin distribution conspiracy who reasonably foresaw that the conspiracy involved more than one kilogram of heroin.

**2.** *Evidentiary Issues*

We review a district court's evidentiary rulings for abuse of discretion and vacate the conviction only if the error was not harmless. *See United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005). Gomez and Castellano-Nunez both contest the admission of voice identification testimony of a Spanish-speaking Drug Enforcement Agency ("DEA") interpreter who monitored their wiretapped phones, and Castellano-Nunez

- 4 -

also contests the admission of testimony by a Federal Bureau of Investigation ("FBI") special agent about drug terminology. Neither argument is persuasive.

A. *Admission of Voice Identification Testimony*

A district court may admit "[a]n opinion identifying a person's voice . . . based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Fed. R. Evid. 901(b)(5). Such an opinion may be admitted as either a lay opinion or an expert opinion. *Id.* advisory committee's notes (commenting that, generally, "aural voice identification is not a subject of expert testimony"); *United States v. Cambindo Valencia*, 609 F.2d 603, 640 (2d Cir. 1979) (finding no "clear abuse of discretion to qualify [an Spanish-language interpreter] as an expert"); *accord* 31 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure* § 7110, at 88 (2000) ("Rule 901(b)(5) permits both lay and expert opinions identifying a voice."). To permit lay opinion to identify a voice, a district court must determine that the opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701; *see United States v. Mendiola*, 707 F.3d 735, 740 (7th Cir. 2013) (requiring that testimony must meet the requirements of both Rule 901 and Rule 701).

The district court here admitted the lay opinion of a Spanish-language interpreter who had translated the wiretaps on Gomez and Castellano-Nunez. *See Mendiola*, 707 F.3d at 739-42 (permitting similar evidence). That interpreter, after listening to stipulated-to voice exemplars of the defendants, then identified the voices on those wiretaps as belonging to Gomez and Castellano-Nunez.

The district court did not abuse its discretion in admitting this evidence. First, the interpreter's opinion was grounded in her own perception -- she spent many hours listening to numerous wiretaps of the defendants. On appeal, Gomez and Castellano-Nunez contend that the interpreter impermissibly formed her opinion "based on the totality of information gathered by various persons in the course of an investigation." *Garcia*, 413 F.3d at 213. This suggestion that the voice identification was based on a joint law enforcement effort is not, however, borne out by the record. The interpreter testified that, though law enforcement provided useful information, her opinions were ultimately formed by listening to the wiretaps and voice exemplars. Second, the opinion helped the jury confirm that Gomez and Castellano-Nunez participated in certain phone calls -- especially as the defendants often did not identify themselves on the phone. And third, the opinion was not an improper attempt to introduce specialized knowledge into the trial. Though there is some appeal to Gomez and Castellano-Nunez's argument that the Spanish language is "specialized knowledge" beyond the ken of the average juror, the record does not demonstrate any particular

expertise on the part of the interpreter. Indeed, the interpreter formed her opinion based on faculties familiar to any layperson -- by examining tone, mannerisms, pitch, inflections, and dialect. Accordingly, the Spanish-language interpreter's testimony was within the bounds of admissible lay opinion on voice identification.

B.      *Admission of Testimony on Drug Terminology*

"[W]e have consistently upheld the use of expert testimony to explain both the operations of drug dealers and the meaning of coded conversations about drugs." *United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003). Indeed, Acosta appealed the admission of the very testimony on drug terminology that Castellano-Nunez now challenges, and we affirmed. *See United States v. Pinzon-Gallardo*, 593 F. App'x 49, 52 (2d Cir. 2014). We likewise find no abuse of discretion. The FBI agent testified as to drug parlance and heroin distribution chains generally, and the district court properly instructed the jury that it was free to reject this testimony.

3.      *Confrontation Clause Violation as to Gomez*

Where, as here, no objection is raised below, "we evaluate the district court's admission of testimony in violation of the Confrontation Clause for plain error." *Dukagjini*, 326 F.3d at 59. We examine if there is "(1) error, (2) that is plain, and (3) that affects substantial rights," and we correct that error "only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997). For an error to affect substantial rights, it must not be

harmless, meaning that there must be "a reasonable probability that the error affected the outcome of the trial." *United States v. Marcus*, 560 U.S. 258, 262 (2010).

Gomez contends that his Confrontation Clause rights were violated when the district court admitted statements that Castellano-Nunez gave to a DEA agent when he was arrested at 28 Maltby Place and statements that Acosta provided to another DEA agent after he was arrested. Castellano-Nunez told the DEA agent that "Moncho" (later established to be Gomez's nickname) lived in one of the bedrooms at 28 Maltby Place where bundles of heroin were found and that "Moncho" was in the Dominican Republic (where Gomez was confirmed to have been visiting at that time). Acosta told the other DEA agent the identity of his supplier, who was arrested with nearly three kilograms of heroin.

Even assuming the district court erred in admitting the statements, we conclude that the error was harmless. This was not, after all, "a close case that hinged directly on the jury's credibility determinations." *United States v. Gaines*, 457 F.3d 238, 244 (2d Cir. 2006). Numerous translated wiretaps chronicled that "Moncho" bought and sold heroin in 100-gram quantities in the larger Acosta conspiracy. And, as described above, an interpreter provided voice identification testimony that "Moncho" was Gomez. Further, phone bills revealed that a wiretapped phone number used by "Moncho" was registered under Gomez's name, with 28 Maltby Place listed as the address. On this record, we cannot conclude that there is a reasonable probability that

the outcome of the trial would have been different had the jury not heard Castellano-Nunez's statement linking "Moncho" to Gomez and Acosta's statement as to quantity. Accordingly, we find no need to vacate Gomez's conviction in the interests of fairness, integrity, or the public reputation of judicial proceedings. *See Johnson*, 520 U.S. at 467.

**4.** *Reasonableness of the Fines*

Finally, we review all aspects of a sentence for reasonableness under a "deferential abuse-of-discretion standard." *United States v. Aldeen*, 792 F.3d 247, 251 (2d Cir. 2015) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). The district court imposed on Gomez and Castellano-Nunez mandatory minimum terms of imprisonment and suspended fines of $50,000 and $17,500, respectively, after finding that the defendants would have the capacity to pay those fines.

Guidelines § 5E1.2(a) provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." "If the defendant is indigent, a fine should not be imposed absent evidence in the record that he will have the earning capacity to pay the fine after release from prison." *United States v. Rivera*, 971 F.2d 876, 895 (2d Cir. 1992). "[I]t is ordinarily an abuse of discretion to impose a fine that exceeds a defendant's ability to pay." *United States v. Salameh*, 261 F.3d 271, 276 (2d Cir. 2001).

Both Gomez and Castellano-Nunez were indigent and represented by court-appointed attorneys. Gomez's attorney attested in a financial affidavit that Gomez

owned no assets, and Gomez's Presentence Report ("PSR") described him as having a second-grade education and typically working temporary construction jobs. Gomez PSR ¶¶ 57-62. Likewise, Castellano-Nunez's PSR stated that "it does not appear that Mr. Castellano-Nunez is able to pay a fine at the present time, nor is he likely to become able to pay one in the future." Castellano-Nunez PSR ¶ 53. At oral argument, the Government advised this Court that it had not asked for a fine for either defendant below, because it appeared from the defendants' financial affidavits that neither defendant had the capacity to pay a fine.

The district court's contrary finding regarding the defendants' ability to pay, however, did not rest on any specific "evidence in the record." *Rivera*, 971 F.2d at 895. The district court noted only that Gomez and Castellano-Nunez were both "able-bodied" and were able to earn a living or employable. Gomez App. at 202; Castellano-Nunez App. at 868. Under these circumstances, the district court exceeded the bounds of its permissible discretion by imposing fines that were greater than the defendants' ability to pay. *See Rivera*, 971 F.2d at 895 (vacating fine where PSR represented an inability to pay and when district court stated only that the defendant was "young" and "will eventually be working"). Accordingly, we modify the judgments by striking the fines imposed on Gomez and Castellano-Nunez. *See, e.g.*, *United States v. White*, 417 F.2d 89, 94 (2d Cir. 1969).

We have reviewed defendants' remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgments of the district court, except that we **MODIFY** the judgments by striking the fines.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk