## BLUMENTHAL IMPORT CORPORATION v. THOS. & JNO. BROCKLEBANK, Limited.

### No. 8561.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 6, 1944.

Decided March 28, 1945.

Charles W. Merritt, of New York City, for appellant.

George E. Beechwood, of Philadelphia, Pa., for appellee.

Before GOODRICH and McLAUGH-LIN, Circuit Judges, and GANEY, District Judge.

McLAUGHLIN, Circuit Judge.

This is an admiralty matter involving damages to a certain lot of wool which had been shipped from Alexandria, Egypt, to Philadelphia, Pennsylvania. The libellant based its contention upon a bill of lading which was issued at Alexandria November ·5, 1938, by William Stapledon & Sons "as agents." The first paragraph of this, which is unnumbered, reads:

"Shipped in apparent good order and condition unless otherwise stated in the margin by Gabra S. Zariffa on board the ship 'Tzar Ferdinand' in or off the port of ~~Port Said~~ Alexandria 133 (One hundred and thirty three) Packages and/or Pieces, marked and numbered as per margin to be conveyed by the above and/or any vessel or vessels to which transhipment may be made by the route and/or methods of conveyance and subject to the conditions and exceptions both general and special hereinafter mentioned and to be delivered subject to the like conditions and exceptions at the port of Philadelphia or so near thereto as she may safely get, unto Chase National Bank of the City of New York, or his or their assigns, he or they paying freight at the rate of:—

"As arranged."

By the Ninth paragraph the shipper constituted the carrier his agent for transhipment and forwarding. The final paragraph reads:

"In Witness whereof the master or agent of the said ship has signed two Bills of Lading, all of this tenor and date, one of which being accomplished, the others shall stand void.

"Dated at ~~Port Said~~ Alexandria, 5th, November 1938."

"For Wm. Stapledon & Son
(Indistinguishable signature)
"As Agents."

On the top left hand margin of the bill of lading is printed, "Wm. Stapledon & Sons. Port Said and Port Tewfik (Suez)." Under this appears a ship's flag with the initials W S & S on it. Then follows a typed description of the wool. After that is stamped "Freight Prepaid" with an indistinguishable date. Below that is "Notify arrival to Messrs. Blumenthal Import Corporation, 75 West Street, New York." Directly under that and in typewriting is the language: *"With transhipment at Port Said per s. s.* 'Macharda'." (Emphasis supplied.)

At the bottom of the margin is the printed clause: *"Subject to all the terms and conditions contained in the bills of lading at present in use by: (and then typed in, appears the following name and address) Messrs. Thos. & Jno. Brocklebank Ltd., Liverpool."* (Emphasis supplied).

The bill of lading also provides that it "* * * shall be construed and governed by English Law * * *" but as there has been no proof by either side as to the law of England, the bill of lading · must be construed in accordance with our general mercantile law. In Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U.S. 397 at 445, 9 S.Ct. 469, 473, 32 L.Ed. 788, the Supreme Court said:

"The law of Great Britain since the declaration of independence is the law of a foreign country, and, like any other foreign law, is matter of fact, which the courts of this country cannot be presumed to be acquainted with, or to have judicial knowledge of, unless it is pleaded and proved."

The wool reached Port Said from Alexandria aboard the S. S. Tzar Ferdinand. At that port it was transhipped by the S. S. City of Mobile and brought by the latter to Philadelphia. It was admitted by the respondent that it owned the S. S. Macharda. The respondent had no connection with either the S. S. Tzar Ferdinand or the S. S. City of Mobile, and never had possession of the wool. The libellant claimed the wool had been shipped in good condition, and that it was delivered in Philadelphia in a damaged state. There was a decree in the district court in favor of the libellant for the sum of $3,923.36 plus interest and costs.

The evidence as to liability consists primarily of the bill of lading plus respondent's admission that Stapledon & Sons were its agents at Port Said. The district court in its opinion interpreted the final clause of the bill of lading reading, "agent of the said ship" as "referring undoubtedly to the Tsar Ferdinand." The court went on to say, "There is no possible construction of the part of the contract relating to transport from Port Said other than that it was made by Stapledon as agent for the owners of the Macharda, * * *" and that Stapledon's authority to bind them for that much of the voyage is covered by respondent's admission of Stapledon's Port Said Agency. The district court also said: "It may be that Stapledon, incidentally to its authority to contract for Brocklebank 'in Port Said', could bind its principal for the carriage of goods to Port Said as a part of a through transport, under a through bill of lading from Alexandria to Philadelphia. But even if the bill of lading be construed as two separate contracts with the shipper made by Stapledon, in one case in its capacity as agent for the Tsar Ferdinand and in the other case as agent for Brocklebank, there is no doubt that Brocklebank was bound by the latter."

The result reached by the district court is founded on the two above emphasized marginal notations, plus the admitted Port Said agency of Stapledon & Sons for Brocklebank. Assuming, per arguendo, the trial judge to be correct in his agency theory, there still remains the basic question of whether the respondent, by Stapledon & Sons, is one of the issuing carriers of the bill of lading. Libellant in its brief with reference to Stapledon's signature as "agent for the said ship" concedes that Stapledon "thus signed as agent of the owners of the 'Tzar Ferdinand' * * *" but because of the marginal notations contends that Stapledon also signed as agent for the respondent.

The document itself is an ordinary marine through bill of lading. The Idefjord, 2 Cir., 114 F.2d 262. The only vessel mentioned in the body of it is the Tzar Ferdinand and that name is typed in. Stapledon & Sons signed at the bottom as "agent of the said ship." On the same line as that phrase and two words further on, a typewritten word is inserted. On the next line "Port Said" is crossed out and "Alexandria" substituted; with the day and month also written in. In other words, care was taken to have the bill of lading conform to the then existing facts and it does seem had there been any intent to include the Macharda that at least the word "ship" would have been changed to read "ships." The total absence of any indication to do other than specifically designate the Tzar Ferdinand alone as the contracting carrier strongly points to such omission as deliberate.

As issued, not only the shipper and consignee, but the issuing ship or ships, were entitled to rely on the bill. Under its plain language it is difficult to see how Brocklebank as owner of the Macharda could assert any rights as an original carrier. Stapledon & Sons were not agents for Brocklebank alone, they represented at least one other ship, the Tzar Ferdinand. They were of enough experience and standing in marine transportation affairs to have their own printed forms of bills of lading. There was nothing unusual about the particular shipment. No reason is suggested why the Macharda should not have been named as principal in the body of the bill of lading, if in fact it had been such principal. Stapledon & Sons, whether possessing the requisite authority at Alexandria or not, could have designated the Macharda as an issuing carrier, if that had been their purpose. Subject to the agency question, by so doing, the Macharda would not only have been bound as a principal, but its affirmative rights under the contract would have been protected. It is also reasonable to suppose that the shipper and the Tzar Ferdinand's owner, would have insisted on this, instead of leaving the vitally important element of the Macharda's responsibility to a marginal recital of the contemplated method of transhipment.

■ We agree that the fact that the Macharda was not the initial carrier would have not prevented it from being a party to the bill of lading. If it were such party, the further fact that it did not carry the bales, would not of itself necessarily eliminate its responsibility. Lyons-Magnus, Inc. v. American-Hawaiian S. S. Co., D.C., 41 F.Supp. 575; Colton v. New York & Cuba Mail S. S. Co., 2 Cir., 27 F.2d 671. Also, ratification by Brocklebank of the City of Mobile as the oncarrier might have brought the former into the transaction. But none of those situations confront us in this case.

The first marginal reference evinces the intention of transhipping at Port Said by the Macharda but it goes no further than that. There is nothing pointing to that ship as assuming any responsibility under the bill of lading from Port Said out, unless it actually carried the wool. The second notation makes the bill subject to the Brocklebank form. It is customary to have that type of clause on marine bills of lading involving an ocean voyage. The ocean carrier's name is usually inserted in such clause. As to this, Scrutton on "Charterparties and Bills of Lading," 14th Ed., says at pages 84 and 85:

"In recent times it has become a common practice for the through bill of lading to contain a provision incorporating 'all conditions expressed in the regular forms of bill of lading in use by the Steamship Company' performing the ocean carriage. In such a case, though the result is often obscure, the general position seems to be that the terms of such regular bill of lading will apply to the sea carriage, and the original contracting party, if still liable in respect of the sea carriage, will be able to rely on the exceptions contained therein.

"Semble, that the companies other than the company which signs and delivers the bill of lading, are not liable and cannot sue on the contract of carriage contained in such bill of lading, unless the signing company had authority to act in their behalf, or its action was afterwards ratified by them. But they will be liable as carriers for goods shipped on board their ships, or to an action of tort for negligent dealings with such goods."

When the bill of lading was executed it was obviously expected that the Macharda, a Brocklebank boat, would be used for the Atlantic crossing. This is a substantial reason for Brocklebank's name being in the particular clause and there is nothing in the proofs to the contrary.

The circumstances that can be gathered from the scant record, support the above construction of the bill of lading. The goods were never aboard the Macharda. The only connection that vessel had with the matter was its inclusion in the description of the future transhipment. Neither Brocklebank directly or Stapledon & Sons as agents of the Macharda had anything to do with the matter other than the two marginal notations. By Clause Nine of the bill of lading the Tzar Ferdinand as the original carrier, had the right of transhipment. As far as the record goes, it exercised that right in favor of the City of Mobile, despite the reference to the Macharda. Any question of a claim against the Tzar Ferdinand because shipment was not made by the Macharda or otherwise does not arise here. Neither that ship nor its owners are parties to this litigation.

■ As we see it, the bill of lading does not justify the finding that the respondent is bound as a principal either for the through carriage or from Port Said to Philadelphia. It was issued by Stapledon & Sons as agent for the Tzar Ferdinand. At most, the margin notes show the thought at the time of its execution was that the Macharda would be used at Port Said for the ocean carriage. This concededly did not happen. The goods went aboard the City of Mobile with the approval of the Tzar Ferdinand and without the Macharda or its owners having any part of the transaction.

In this view of the case it is not necessary to pass on the question of the authority of Stapledon & Sons as agents for Brocklebank, to execute the bill of lading at Alexandria. The judgment in favor of the libellant, Blumenthal Import Corporation, is therefore reversed and the cause remanded to the district court with directions to enter judgment in favor of the respondent, Thos. & Jno. Brocklebank, Ltd.