Billy YUNG and Yung Yau, Plaintiffs–
Appellants–Cross–Appellees,

v.

Andrew LEE, Defendant–Appellee,

BDO International and BDO Binder,
Defendants–Cross–Defendants–
Appellees–Cross–Appellants,

BDO Seidman, LLP, Defendant–
Cross–Defendant–Appellee,

Integrated Transportation Network
Group, Inc. and Wu Zhi Jian,
Defendants.

Docket No. 04–3130 CV(L),
04–3320 CV(XAP).

United States Court of Appeals,
Second Circuit.

Argued: June 9, 2005.

Decided: Dec. 13, 2005.

Steven J. Cohen, Wachtel & Masyr, LLP, New York, New York, for Plaintiffs–Appellants–Cross–Appellees.

Christopher H. Lunding, Cleary, Gottlieb, Steen & Hamilton, New York, New York (Inna Reznik, of counsel), for Defendants–Cross–Defendants–Appellees–Cross–Appellants BDO International and BDO Binder.

Greg A. Danilow, Weil, Gotshal & Manges LLP, New York, New York, for Defendant–Cross–Defendant–Appellee BDO Seidman, LLP.

Before: JACOBS, SACK, and RAGGI, Circuit Judges.

RAGGI, Circuit Judge.

Plaintiffs Billy Yung and Yung Yau purchased securities offered privately by Integrated Transportation Network Group, Inc. ("ITNG"). They now appeal from a judgment of the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*), entered on May 11, 2004, which made final an order dated September 5, 2002, dismissing federal claims brought under Sections 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act"), *see* 5 U.S.C. §§ 77*l*, 77o (2000); Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, *see* 15 U.S.C. §§ 78j(b), 78t(a); SEC Rule 10b–5, *see* 17 C.F.R. § 240.10b–5, and various state common law claims for fraud and negligent performance of accounting services. Because we conclude that Section 12(a)(2) of the Securities Act does not afford a cause of action to persons, such as the plaintiffs, who purchased securities in a private offering and, therefore, not "by means of a prospectus," 5 U.S.C. § 77*l*, we hereby affirm the district court's dismissal of that statutory claim. In a separate summary order also issued today, we affirm the district court's dismissal of plaintiffs' remaining federal and state law claims.

## I. *Background*

### A. *The Section 12(a)(2) Claim*

We here detail the facts alleged in plaintiffs' complaint relevant to their Section 12(a)(2) claim alleging negligence against BDO Seidman.

### 1. *The Plaintiffs*

Plaintiffs Billy Yung and his father Yung Yau are residents and citizens of Hong Kong who, between December 1998 and March 1999, acquired ITNG securities in a series of private transactions with ITNG.

### 2. *The Defendants*

Defendant ITNG is a Delaware corporation with offices in New York. At times relevant to this appeal, ITNG's shares were publicly listed and traded on the securities markets of the United States. Defendant-appellee Andrew Lee, a citizen of the United States and a New York resident, was the president and a director of ITNG. Defendant Wu Zhi Jian, a citizen and resident of China, was then the chairman of the board and a director of ITNG.

In 1998, ITNG was a wholly-owned subsidiary of the Dawson Science Corporation ("Dawson"). Pursuant to a prospectus dated June 29, 1998, which was part of a Form S–1 Registration Statement filed with the Securities and Exchange Commission, Dawson offered to distribute all of the outstanding shares of ITNG common stock to Dawson shareholders in exchange for their Dawson common stock on a one-for-four basis. This offering was part of a reorganization in which Dawson itself would cease operations; Dawson shareholders would become ITNG shareholders; and ITNG would take ownership of Dawson's businesses, including 92% ownership of Shenzhen Jinzhenghua Transport Industrial Development Co., Ltd. ("Shenzhen"). Through Shenzhen, ITNG operated a group of transportation-related businesses in China, including an automobile rental business, a taxi service, and an automobile repair business.

Defendant BDO Seidman, LLP, is a limited liability partnership engaged in the

practice of public accounting. Organized under the laws of New York, BDO Seidman has its principal place of business in that state. BDO Seidman owns or exercises control over defendants BDO International and BDO Binder, Hong Kong-based entities also engaged in public accounting.[1] At times relevant to the plaintiffs' claims, BDO International served as ITNG's principal independent auditor and accounting firm. BDO Binder also issued ITNG audit reports upon which the plaintiffs, in part, base their Section 12(a)(2) claim.

### 3. *Plaintiffs' Purchases of ITNG Securities*

Plaintiffs purchased their ITNG holdings directly from ITNG pursuant to a series of private subscription and letter agreements between December 17, 1998, and March 26, 1999. ITNG's solicitation of plaintiffs' purchases began on November 5, 1998, when ITNG representatives first met with Billy Yung, and continued during two subsequent meetings in November and a final meeting in December attended by defendant Andrew Lee. Each of these meetings was held in China, the first and third in Shenzhen, the second and fourth in Hong Kong. During these meetings, ITNG representatives presented the company's business plan and stressed an expected expansion in the Chinese market for auto leasing. ITNG also stressed the value of its taxi licenses, which was verified by the audited financial statements accompanying the plan. Plaintiffs' financial advisors were present at two of the meetings and asked Lee and the ITNG representatives questions regarding ITNG's financial statements. ITNG also made available for plaintiffs' review the June 29, 1998 prospectus prepared in con-

nection with the separate offering of ITNG stock to Dawson shareholders. This prospectus incorporated an audit report prepared by BDO International.

Relying upon the statements made by ITNG representatives during the solicitation meetings and upon information contained in the prospectus and other publicly filed documents, Billy Yung purchased newly issued ITNG securities—consisting of a mix of stock, warrants, and convertible notes—pursuant to private subscription and letter agreements on five occasions between December 17, 1998, and February 10, 1999. After further discussions, Billy Yung made another ITNG stock purchase on March 26, 1999. On that same date, plaintiff Yung Yao also purchased his ITNG shares. Each subscription or letter agreement entered into by the plaintiffs stated, *inter alia,* that the securities "were being sold to the undersigned without registration under any state, or federal or PRC law requiring registration of securities for sale and accordingly will constitute 'restricted securities' as defined in Rule 144 of the U.S. Securities and Exchange Commission." *See, e.g.* Subscription Agreement dated Dec. 17, 1998, § 2.01(d).

Plaintiffs assert that, in May 1999, they discovered that ITNG's financial position was "dire" because of previously undisclosed liabilities and "major problems" associated with ITNG's transportation businesses and properties in China. Compl. ¶¶ 38–39. They submit that there were numerous false and misleading statements and omissions in the June 29, 1998 prospectus and in the other publicly filed documents provided to them by defendants, which effectively concealed ITNG's true financial position at the time of the plaintiffs' purchases.

---

**1.** According to the corporate disclosure statement submitted to this court pursuant to Federal Rule of Appellate Procedure 26.1, BDO International and BDO Binder are trade names used by the Hong Kong accounting partnership of BDO McCabe Lo & Co..

## B. *The Instant Action*

Plaintiffs filed this action on May 24, 2000, and the defendants moved to dismiss on various grounds. The district court denied the motion of BDO International and BDO Binder for dismissal based on a purported lack of subject matter jurisdiction, but it granted dismissal of the complaint as against these defendants on the ground of *forum non conveniens*. The district court also granted dismissal of the complaint against BDO Seidman on the ground that the plaintiffs had failed to plead facts sufficient to state their federal or state claims. With particular reference to the federal securities claim that is the focus of this opinion, the district court concluded that Section 12(a)(2) of the Securities Act does not reach private securities transactions.

Following additional proceedings not here at issue, a final judgment of dismissal was entered on May 11, 2004, and this appeal followed.[2] Plaintiffs appeal all grounds relied on by the district court to support the dismissal of their claims. Meanwhile, the defendants BDO International and BDO Binder cross-appeal from that part of the district court's judgment denying their motion to dismiss for lack of subject matter jurisdiction.

**2.** With respect to the other named defendants, the district court noted ITNG's default on November 14, 2000, and entered a judgment against ITNG on May 11, 2004, in the amount of $8,186,279.45 in favor of Billy Yung and in the amount of $6,578,260.27 in favor of Yung Yau. The district court also noted the initial default of Andrew Lee, but set that entry aside on May 15, 2001. Lee files no separate brief on this appeal, apparently relying on the arguments of his co-defendants to defend the district court's judgment of dismissal. Defendant Wu Zhi Jian was never served with the complaint in this action, has not appeared before the district court, and is not a party on this appeal.

## II. *Discussion*

In this opinion, we address only plaintiffs' appeal from the dismissal of their Section 12(a)(2) claim alleging negligence on the part of BDO Seidman in connection with the sale of ITNG securities. We hold that Section 12(a)(2) of the Securities Act does not apply to private transactions because such transactions are not subject to the prospectus delivery requirements of the Act as construed by the Supreme Court in *Gustafson v. Alloyd Co.*, 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995).[3]

### A. *The Standard of Review*

We review *de novo* the district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting as true all facts alleged in the complaint "and drawing all reasonable inferences in the plaintiffs' favor." *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir.2004) (internal quotation marks omitted). In addition to the allegations in the complaint, we also consider on a Rule 12(b)(6) motion "any written instrument attached to [the complaint] as an exhibit," "any statements or documents incorporated in it by reference," and any document not incorporated but that is, nevertheless, "integral" to the complaint because the complaint "relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir.2002)

**3.** *Gustafson* and cases decided prior to the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA") refer to what is currently Section 12(a)(2) of the Securities Act as "Section 12(2)." The renumbering was necessary because the PSLRA added a subsection to Section 12 addressing loss causation. *See* Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67, § 105, 109 Stat. 737, 757 (codified at 15 U.S.C. § 77*l*). In this opinion, we refer to the section by its present designation, 12(a)(2), even when discussing cases decided before the enactment of the PSLRA.

(quoting *International Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (*per curiam* )) (internal quotation marks omitted); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir.2005). We will affirm a judgment of dismissal "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rombach v. Chang*, 355 F.3d at 169 (internal quotation marks omitted).

### B. *The Section 12(a)(2) Claim*

Section 12(a)(2) of the Securities Act imposes liability on any person who offers or sells securities by means of a prospectus containing material misstatements. It states, in relevant part:

> Any person who . . .
>
> (2) offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, *by means of a prospectus or oral communication,* which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recov-

er the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77*l* (a)(2) (emphasis added).

Plaintiffs submit that they are entitled to sue BDO Seidman under this section because, although they purchased ITNG shares in a private rather than public offering, their purchases were made in reliance on a prospectus prepared for a public offering. Like the district court, we conclude that a Section 12(a)(2) claim cannot be maintained by a private purchaser of securities.[4]

#### 1. *Section 12(a)(2) Applies Only to Public Offerings of Securities*

In *Gustafson v. Alloyd Co.*, the Supreme Court considered whether the protections of Section 12(a)(2) "extend[ ] to a private, secondary transaction, on the theory that recitations in the purchase agreement are part of a 'prospectus.' " 513 U.S. at 564, 115 S.Ct. 1061. Before *Gustafson*, this court, and a number of our sister circuits, had ruled that Section 12(a)(2) "applies to private as well as public offerings of securities." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 361 (2d Cir.1992); *see Pacific Dunlop Holdings, Inc. v. Allen & Co.*, 993 F.2d 578, 587 (7th Cir.1993); *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1032 (5th Cir.1990); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359 (4th Cir.1986). In *Gustafson*, however, the Supreme Court held that the plaintiffs could not sue under Section 12(a)(2) because their private sales contract did not qualify as a "prospectus."[5]

---

**4.** Because we affirm the district court's judgment on the ground that Section 12(a)(2) does not apply to private securities transactions, we need not here decide whether BDO Seidman could be considered an "offeror" or "seller" of securities within this section of the

Securities Act. *See Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1016–17 (2d Cir.1989) (discussing "seller" under § 12(a)(2)).

**5.** To the extent Section 12(a)(2) also refers to offers made by means of an "oral communi-

The Court explained that Section 12(a)(2) liability "cannot attach unless there is an obligation to distribute the prospectus in the first place (or unless there is an exemption)." [6] *Gustafson v. Alloyd Co.*, 513 U.S. at 571, 115 S.Ct. 1061. No such obligation arises with respect to private or secondary sales of securities because "the word 'prospectus' is a term of art referring to a document that describes a *public offering* of securities by an issuer·or controlling shareholder." *Id.* at 584, 115 S.Ct. 1061 (emphasis added). Noting Congress's failure to indicate any intent to extend Section 12(a)(2) liability to "private or secondary sale[s]," *see id.* at 582, 115 S.Ct. 1061, the Court concluded that "[t]he intent of Congress and the design of the statute require that § 12[ (a) ](2) liability be limited to public offerings," *id.* at 578, 115 S.Ct. 1061.

*Gustafson*'s narrow construction of the term "prospectus" as used in Section 12(a)(2) has drawn sharp criticism. *See id.* at 585, 115 S.Ct. 1061 (Thomas, J., dissenting); *id.* at 596, 115 S.Ct. 1061 (Ginsburg, J., dissenting); *see also* Ted J. Fiflis, *Gustafson v. Alloyd Co., Judicial vs. Legislative Power*, 23 Sec. Reg. L.J. 423 (1996); Stephen M. Bainbridge, *The Securities Act Section 12(2) After the Gustafson Debacle*, 50 Bus. Law. 1231 (1995); Elliot Weiss, *Securities Act Section 12(2) After Gustafson v. Alloyd Co.: What Questions Remain?*, 50 Bus. Law. 1209 (1995). No matter; the Supreme Court's interpretation of a statute binds lower federal courts in their application of that statute.

Thus far, this court has not had to reach the issue of whether the rationale for decision in *Gustafson*, which involved a private secondary sale, necessarily precludes a Section 12(a)(2) claim with respect to any private securities transaction. *See Kowal v. IBM, Corp. (In re IBM Corporate Sec. Litig.)*, 163 F.3d 102, 111 (2d Cir.1998) (finding it unnecessary to decide whether *Gustafson* limits § 12(a)(2)'s reach to public offerings because statements at issue were not materially false or misleading). Nevertheless, district courts in this circuit have routinely cited *Gustafson* in reaching what can reasonably be characterized as "the predominate conclusion that purchasers in private or secondary market offerings are precluded from bringing actions under Section 12(a)(2)." *Rogers v. Sterling Foster & Co. (In re Sterling Foster & Co. Sec. Litig.)*, 222 F.Supp.2d 216, 244–46 (E.D.N.Y.2002) (collecting cases); *see AIG Global Secs. Lending Corp. v. Banc of Am. Secs. LLC*, 254 F.Supp.2d 373, 389 (S.D.N.Y.2003) ("[T]he critical inquiry in determining if § 12(a)(2) liability exists is whether the securities were sold through a public offering or a private transaction."). Three of our sister circuits have considered the question and similarly concluded that a Section 12(a)(2) claim cannot be brought in connection with a private offering. *See Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir.2001) ("Section 12 of the 1933 Act does not apply to private transactions."); *Maldonado v. Dominguez*, 137 F.3d 1, 8 (1st Cir.1998) (concluding that Section 12(a)(2) action "is not available to" claimants who purchased securities in private placement); *see also Joseph v. Wiles*,

cation," *Gustafson* held that this phrase "is restricted to oral communications that relate to a prospectus." 513 U.S. at 567–68, 115 S.Ct. 1061 (noting agreement among Courts of Appeals on this point).

**6.** Section 3 of the Securities Act exempts certain types of securities from the registration requirements of that statute, *see* 5 U.S.C. § 77c, "although they are covered by § 12," *Gustafson v. Alloyd Co.*, 513 U.S. at 579, 115 S.Ct. 1061. Because the parties in this case do not argue that the securities at issue are exempt under Section 3, we need not consider this possibility.

223 F.3d 1155, 1161 (10th Cir.2000) (observing that "only purchasers in the initial public offering [may] bring suit pursuant to section 12[ (a) ](2)").

■ We now join these courts in holding that *Gustafson's* definition of a prospectus as "a document that describes a *public offering* of securities" compels the conclusion that a Section 12(a)(2) action cannot be maintained by a plaintiff who acquires securities through a private transaction, whether primary or secondary. *Gustafson v. Alloyd Co.,* 513 U.S. at 584, 115 S.Ct. 1061 (emphasis added). Section 12(a)(2) applies only to offerings "by means of a prospectus." 15 U.S.C. § 77*l*(a)(2). A private offering is not effected "by means of a prospectus" because *Gustafson* states that Section 12(a)(2) liability cannot attach unless there is an "obligation to distribute a prospectus," 513 U.S. at 571, 115 S.Ct. 1061, and there is no "obligation" to distribute a document that describes a public offering to a private purchaser.

2. *The Distribution of a Prospectus Prepared in Connection with a Public Offering to a Purchaser in a Private Transaction Does Not Permit that Purchaser to Pursue a Section 12(a)(2) Claim*

■ Plaintiffs acknowledge that they purchased the securities at issue through a series of private transactions, not any public offering. They similarly acknowledge that none of the subscription or letter agreements pursuant to which they made their purchases qualifies as a "prospectus" under the definition articulated in *Gustafson.* Nevertheless, plaintiffs argue on appeal, as they did before the district court, that they state a claim under Section 12(a)(2) because "the defendants' market-

ing of the ITNG shares relied heavily upon a recent company Registration Statement, including [the June 29, 1998] Prospectus." Appellants' Br. at 32. Like the district court, we think that this construction of Section 12(a)(2) cannot easily be reconciled with the Supreme Court's reasoning in *Gustafson.*

The defendants were under no "obligation to distribute" the June 29, 1998 prospectus or any other prospectus to the plaintiffs in connection with the challenged private transactions. *Gustafson* indicates that without such an obligation, a securities transaction cannot reasonably be deemed to have occurred "by means of a prospectus." *Gustafson v. Alloyd Co.,* 513 U.S. at 571, 115 S.Ct. 1061 ("[T]he liability imposed by § 12[ (a) ](2) cannot attach unless there is an obligation to distribute the prospectus in the first place (or unless there is an exemption).").

In any event, under the express terms of the subscription and letter agreements, the parties agreed that the ITNG securities at issue "were not offered ... by means of publicly disseminated advertisements or sales literature." *See, e.g.,* Subscription Agreement dated Dec. 23, 1998, § 2.01(c). Where, as in this case, plaintiffs were aware at the time they signed this disclaimer that they had reviewed a prospectus disseminated in connection with a separate public offering, they will not be permitted to disavow this contract term to claim that the challenged offering was "by means of" the prospectus. *See Grumman Allied Indus., v. Rohr Indus.,* 748 F.2d 729, 734–35 (2d Cir.1984) (citing *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 319, 184 N.Y.S.2d 599, 601, 157 N.E.2d 597 (1959)).[7]

---

7. Each subscription and letter agreement stipulates that it shall be governed by the laws of New York. *See, e.g.,* Subscription Agreement dated Dec. 23, 1998, § 3.03.

150

Accordingly, we conclude that the plaintiffs' Section 12(a)(2) claim against BDO Seidman in connection with a private offering of securities was properly dismissed. To the extent plaintiffs sue BDO Seidman and other defendants in connection with these same securities transactions under different theories of federal and state common law, we address the dismissal of those claims in a separate summary order.

### III. *Conclusion*

Because ITNG offered and sold securities to plaintiffs through private transactions, it was under no "obligation" to distribute any prospectus. Thus, it cannot be deemed to have sold securities "by means of a prospectus," as the term "prospectus" has been construed by the Supreme Court in *Gustafson*. Plaintiffs conceded as much in their subscription and letter agreements and, therefore, can prove no set of facts that would entitle them to relief against BDO Seidman under Section 12(a)(2). The judgment of the district court dismissing plaintiffs' Section 12(a)(2) claim against BDO Seidman is AFFIRMED.